Raymond P. Boucher, State Bar No. 115364
  *ray@boucher.la*
Amanda J.G. Walbrun, State Bar No. 317408
  *walbrun@boucher.la*
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903
Tel:   (818) 340-5400 /Fax: (818) 340-5401

David K. TeSelle (*Pro Hac Vice forthcoming*)
  *dteselle@burgsimpson.com*
Lisa R. Marks (*Pro Hac Vice forthcoming*)
  *lmarks@burgsimpson.com*
Morgan L. Carroll (*Pro Hac Vice forthcoming*)
  *mcarroll@burgsimpson.com*
Alyssa Hill (*Pro Hac Vice forthcoming*)
  *ahill@burgsimpson.com*
BURG SIMPSON
ELDREDGE HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, Colorado 80112
Tel: (303) 792-5595 /Fax: (303) 708-0527

*Attorneys for Plaintiff Jane Doe*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, f/k/a KRISTY ALTHAUS, an individual,<br><br>       Plaintiff,<br><br>       v.<br><br>AYLO GLOBAL ENTERTAINMENT INC., a Delaware corporation; AYLO USA INCORPORATED, a Delaware corporation; AYLO BILLING US CORP., a Delaware corporation; ETHICAL CAPITAL PARTNERS, a foreign entity; MINDGEEK S.A.R.L., a foreign entity; MG FREESITES, LTD., d/b/a "PORN HUB," a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; 9219-1568 QUEBEC, INC., a foreign entity;  and MG BILLING US CORP., a Delaware corporation,<br><br>       Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **18 U.S.C. §§ 1591(a)(2), 1595**<br>2. **18. U.S.C. §§ 1591(a)(1), 1595**<br>3. **18 U.S.C. §§ 1594(c), 1591(a), 1595**<br>4. **18 U.S.C. §§ 1594(a), 1591, 1595**<br>5. **18 U.S.C. §§ 2, 1591(a)(1), (2), 1595**<br>6. **15 U.S.C. § 1125(a)**<br>7. **Cal. Civ. Code § 52.5**<br>8. **Cal. Civ. Code § 1708.85**<br>9. **Cal. Civ. Code § 3344(a)**<br>10. **Right of Publicity**<br>11. **Right of Privacy**<br>12. **False Light**<br>13. **IIED**<br>[Pseudonym Status Warranted, Action Based on Civil Code § 1708.85]<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff Jane Doe, f/k/a Kristy Althaus, ("Plaintiff"), by and through her attorneys, BOUCHER LLP and BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C., hereby submits her complaint for damages and other relief for violations of the United States anti-sex trafficking statute, the Trafficking Victim Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1591, *et seq.*, The Lanham Act, 15 U.S.C. § 1125(a), California's anti-trafficking statute, the California Trafficking Victims Protection Act (CTVPA), Cal. Civ. Code § 52.5, California Distribution of Private Sexually Explicit Materials, Cal. Civ. Code § 1708.85, California Commercial Misappropriation of Likeness, Cal. Civ. Code § 3344(a), California's right of publicity, California's constitutional right to privacy, Cal. Const., Art. I § 1, California's false light invasion of privacy, and intentional infliction of emotional distress against Defendants AYLO GLOBAL ENTERTAINMENT INC., a Delaware corporation; AYLO USA INCORPORATED, a Delaware corporation; AYLO BILLING US CORP., a Delaware corporation; ETHICAL CAPITAL PARTNERS, a foreign entity; MINDGEEK S.A.R.L., a foreign entity; MG FREESITES, LTD., d/b/a "PORN HUB," a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; 9219-1568 QUEBEC, INC., a foreign entity;  and MG BILLING US CORP., a Delaware corporation (hereinafter collectively "Defendants" or "MindGeek").

## INTRODUCTION

1.     Sex trafficking is a pervasive evil that has left an indelible stain on the fabric of society.

2.     It is a global crime with enormous profits, generating an estimated $99 billion per year.[1]

3.     Unfortunately, pornography directly fuels this insatiable demand for

---

[1] INT'L LAB. ORG., PROFITS AND POVERTY: THE ECONOMICS OF FORCED LABOR 7, 13, 15 (2014).

sexual exploitation and MindGeek—owner and operator of the vast majority of internet pornography—is an all too willing partner in these crimes.

4.      Recent estimates suggest as many as 4.8 million women and children fall victim to sex trafficking throughout the United States and globally each year.[2]

5.      Plaintiff is one such surviving victim.   Threatened, coerced, and physically and sexually assaulted, Plaintiff was forced to succumb to the demands of the GirlsDoPorn sex trafficking venture, entirely sustained by MindGeek's vast online network.

6.      As sex trafficking has grown to epidemic proportions, it has become widely recognized that our laws must look beyond the individual sex traffickers and buyers to effectively deter and prevent these crimes.  Congress therefore enacted the William Wilberforce TVPRA of 2008 to expand civil liabilities against anyone who not only directly perpetrates sex trafficking crimes, but also anyone who knowingly benefits from their negligent or reckless participation in a sex trafficking venture.

7.      Here, MindGeek is liable for both.

8.      This lawsuit arises from MindGeek's willful involvement in Michael Pratt's widespread and publicized GirlsDoPorn sex trafficking venture, resulting in millions of dollars earned by MindGeek at the expense of human life, human rights, and human dignity.

9.      Despite its actual or constructive knowledge that GirlsDoPorn used force, fraud, and coercion to film young women in pornographic videos, MindGeek continued to offer its global platform, internet distribution channels, and financial lifeline to the GirlsDoPorn criminal enterprise for over a decade.

10.      Countless women, including Plaintiff, reported to MindGeek that the GirlsDoPorn videos were unlawful and that online distribution was done without their

---

[2] INT'L LAB. ORG.,   GLOBAL ESTIMATES OF MODERN SLAVERY: FORCED LABOR AND FORCED MARRIAGE 39 (2017).

consent.

11.    MindGeek callously ignored these victims' harrowing pleas to remove unlawful content, choosing instead to offer its world-wide distribution channels and financial support to the GirlsDoPorn sex trafficking venture. MindGeek categorically prioritized its profits and partnership with GirlsDoPorn over the well-being and future of young people, like Plaintiff.

12.    However, MindGeek did not just provide the global platform and revenue stream for GirlsDoPorn's sex trafficking, it participated in publicly exploiting and humiliating GirlsDoPorn victims, including Plaintiff, distributing the unlawful content among MindGeek's vast network of pornography websites.

13.    In violation of both federal and state law, MindGeek further advertised GirlsDoPorn content, with the despicable knowledge that the videos were filmed through force, fraud, and coercion and distributed without the victim's consent.

14.    GirlsDoPorn marketed its business as selling content featuring women who were not professional porn stars, but rather were appearing in their first and only video.

15.    MindGeek knew, based on this business model, that GirlsDoPorn needed to film a steady stream of young women, ages 18-23, who had never previously engaged in pornography and who did not want a career in pornography.

16.    MindGeek further received numerous reports from Plaintiff and other victims about GirlsDoPorn's fraudulent and illegal practices, exploitation of power disparity, harassment, intimidation, threats of force, force, and other forms of assault and coercion which led to the commercial filming of their sex acts.

17.    Nevertheless, MindGeek knowingly and maliciously promoted, participated, and profited from the GirlsDoPorn sex trafficking venture, accepting the criminal enterprise into its Content Partner and Premium Viewshare Programs.

18.    In willful and reckless disregard of Plaintiff's and other's rights, MindGeek partnered with GirlsDoPorn to maximize views of sex trafficking content,

increase customer subscriptions, and generate millions of dollars from the unlawful distribution and advertising of GirlsDoPorn videos.

19.     Even after federal law enforcement seized and shut-down GirlsDoPorn in October 2019, MindGeek continued hosting, distributing, and advertising the unlawful content, including the sex trafficking videos of Plaintiff.

20.     While GirlsDoPorn's principals and staff were criminally prosecuted, MindGeek enjoyed a steady stream of revenue exploiting Plaintiff's name, images, identity, and videos for its own business and financial gain.

21.     Plaintiff has been irrevocably harmed by MindGeek's willful and wrongful choice to profit off the exploitation of Plaintiff and others like her.  She brings this action to enjoin MindGeek's further unlawful conduct and seeks compensation for the harm and losses she sustained as a result.  Plaintiff makes these allegations upon personal knowledge and information and belief that substantial evidentiary support exists, and will exist, after a reasonable opportunity for discovery.[3]

## **THE PARTIES**

### **A.     PLAINTIFF**

22.     Plaintiff is a United States citizen and was at all relevant times a resident of and domiciled in the State of Colorado.

---

[3] Plaintiff incorporates by reference as though fully set forth herein: (a) all pleadings from the GirlsDoPorn state court action (*Jane Does Nos. 1-4 v. GirlsDoPorn.com*, Complaint, No. 37-2016-00019027-CU-FR-CTL (Cal. Super. Ct. Jun. 2, 2016); *Jane Doe Nos. 1-14*, Second Amended Complaint, No. 37-2016-00019027-CU-FR-CTL (Cal. Super. Ct. Mar. 13, 2017); *Jane Doe Nos. 17-22 v. GirlsDoPorn.com*, Complaint, No. 37-2017-00043712-CU-FR-CTL (Cal. Super. Ct. Nov. 8, 2017) (collectively, "GDP State Action")), attached hereto in relevant part as Exhibits 1a, 1b, and 1c, respectively;  (b) *Jane Doe Nos. 1-22 v. GirlsDoPorn.com*, Statement of Decision, Nos. 37-2016-00019027-CU-FR-CTL, 37-2017-00033321-CU-FR-CTL, 37-2017-00043712-CU-FR-CTL (Cal. Super. Ct. Apr. 27, 2020), attached hereto as Exhibit 2; and (c) all pleadings from the related MindGeek federal court action (*Jane Doe Nos. 1-40 v. MG Freesites, Ltd*, Complaint, No. 3:20-CV-02440-W-RBB (S.D. Cal. Dec. 15, 2020), attached hereto as Exhibit 3;  *Jane Doe Nos. 1-50 v. MG Freesites, Ltd.*, First Amended Complaint, No. 3:20-CV-02440-WQH-KSC (S.D. Cal. Apr. 1, 2021), attached hereto as Exhibit 4 (collectively "MindGeek Federal Action").

23.     Plaintiff proceeds under the pseudonym Jane Doe, f/k/a Kristy Althaus, pursuant to California Civil Code § 1708.85(f)(1) to protect her identity because of the sensitive and highly personal nature of this matter, which involves sex trafficking, sex assault, harassment, and threats of force.

24.     Plaintiff's decision to use the pseudonym Jane Doe was informed, in part, by the historical harassment, threats, and scrutiny she received from the public after the subject videos were published and widely distributed on the Internet without her consent.

25.     In addition to being regularly harassed, threatened, and scrutinized, Plaintiff has been unable to obtain job opportunities and maintain healthy relationships. Because of Defendants' actions, Plaintiff had no choice but to change her legal name, which she intends to safeguard from the public.

26.     Due to the nature of this controversy, Plaintiff is at serious risk of continued threats, harassment, and harm.  Despite changing her legal name, Plaintiff has been repeatedly followed and harassed as a result of Defendants' conduct alleged herein. As recently as May-June 2023, Plaintiff was assaulted at her home by a self-described PornHub subscriber who confronted her about the recent removal of the subject videos from Defendants' websites.  The subscriber did not act alone and was with other male individuals terrifying Plaintiff.  Unidentified men continue to approach Plaintiff's home at all hours of the day and night.  Plaintiff fears for her life and safety, as well as the lives and safety of people close to her.

27.     Plaintiff's safety, security, and right to privacy outweigh the public interest in her identification.

28.     Plaintiff's legitimate concerns outweigh any prejudice to Defendants by allowing her to proceed anonymously.  Plaintiff will agree to reveal her identity to the Defendants for the limited purpose of investigating her claims once the parties are governed by a protective order.  She seeks redaction of her personal identifying information from the public docket and assurances that Defendants will not use or

publish her identity in a manner that will compromise her personal life and safety.

**B.    DEFENDANTS**

**1.    *MindGeek Defendants***

29.    Defendant MINDGEEK S.A.R.L. is a foreign entity incorporated in Luxembourg conducting business throughout the United States, including within the Central District of California. MINDGEEK S.A.R.L.'s principal place of business is located at 7777 Decarie Boulevard, Montreal, Quebec, H4P 2H2, Canada, with satellite offices in San Diego, Los Angeles, San Francisco, London, Bucharest (Romania), and Nicosia (Cyprus).

30.    Originally known as Man Win, MINDGEEK S.A.R.L. is the consolidation of two large pornography companies, i.e. Mansef and InterTube.

31.    On information and belief, MINDGEEK S.A.R.L. has acquired numerous competing businesses and now owns and operates over one hundred (100) pornographic websites, production companies, and brands.  By doing so, it owns and/or controls the majority of pornography on the Internet, including among others, websites PornHub.com, YouPorn.com, RedTube.com, Xtube.com, and Tube8.com.

32.    On information and belief, MINDGEEK S.A.R.L. operates its websites through its subsidiary MG FREESITES, LTD.

33.    On information and belief, MINDGEEK S.A.R.L. changed its name to AYLO  last month  in August 2023.

34.    Defendant MG FREESITES, LTD., dba "PORN HUB," is a foreign entity incorporated in the Republic of Cyprus, with an address of Block 1, Dali Industrial Area, 195-197 Old Road Nicosia-Limassol, Dali, 2540 Cyprus, and conducting business throughout the United States, including within the Central District of California.

35.    MG FREESITES, LTD. is a wholly owned subsidiary of MINDGEEK S.A.R.L., either directly or through intermediary companies that are also under the control of MINDGEEK S.A.R.L. and is predominantly under the control of and

operated by directors, officers, and employees working in MindGeek's offices in the United States and Canada.[4]

36.   Defendant MINDGEEK USA INCORPORATED is a corporation incorporated in the State of Delaware conducting business throughout the United States, including the Central District of California. Its principal address is located at 21800 Oxnard Street, Suite 150, Woodland Hills, California 91367 in this District.

37.   MINDGEEK USA INCORPORATED is a wholly owned subsidiary of MINDGEEK S.A.R.L., either directly or through intermediary companies that are also under the control of MINDGEEK S.A.R.L.[5]

38.   Defendant 9219-1568 QUEBEC, INC., dba "MindGeek," is a foreign entity organized and existing under the laws of Canada with a principal place of business located 7777 Decarie Boulevard, Montreal, Quebec, H4P 2H2, Canada. It is a wholly owned subsidiary of MINDGEEK S.A.R.L., either directly or through intermediary companies that are also under the control of MINDGEEK S.A.R.L.[6]

39.   Upon information and belief, 9219-1568 QUEBEC, INC. employs numerous employees to operate a portfolio of pornographic websites and conducts business throughout the United States, including the Central District of California.

40.   Defendant MG BILLING US CORP. is a corporation incorporated in the State of Delaware with a principal address of 21800 Oxnard Street, Suite 150, Woodland Hills, California 91367. It is a wholly owned subsidiary of MINDGEEK S.A.R.L., either directly or through intermediary companies that are also under the

---

[4] Plaintiff incorporates by reference as though fully set forth herein MindGeek's Corporate Disclosure Statements in the MindGeek Federal Action: (a) MindGeek USA, Inc., MG Freesites Ltd, and MindGeek S.a.r.l. Notice of Parties with Financial Interest, ECF No. 11 (Jan. 8, 2021), attached hereto as Exhibit 5; and (b) 9219-1568 Quebec Inc. and MG Billing US Corp. Notice of Parties with Financial Interest, ECF No. 27 (Apr. 23, 2021),  attached hereto as Exhibit 6.

[5] *See* Ex. 5.

[6] *See* Ex. 6.

control of MINDGEEK S.A.R.L., and conducts business throughout the United States, including the Central District of California.[7]

41.     Upon information and belief, MG BILLING US CORP. is a credit card processing company that that works to operate and/or manage the subscription services for one or more of MindGeek's pornographic websites.

### 2.     *Rebranding of MindGeek Defendants*

42.     Defendant ETHICAL CAPITAL PARTNERS is a foreign private equity firm that, on information and belief, was created in 2022 for the purpose of acquiring stock of one or more of the MindGeek entities on or about March 16, 2023, due to MindGeek's legal troubles and exposure. Several of the partners and/or directors of ETHICAL CAPITAL PARTNERS are also criminal defense attorneys. The principal place of business of ETHICAL CAPITAL PARTNERS is located at 200 Elgin Street, Suite 403, Ottawa, ON K2P 1L5.

43.     ETHICAL CAPITAL PARTNERS and the MINDGEEK Defendants rebranded MINDGEEK to the brand name AYLO last month in August 2023 due to "the need for a fresh start."[8]  Upon information and belief, business entities associated with MINDGEEK, n/k/a AYLO, were renamed and/or newly established.

44.     Defendant AYLO GLOBAL ENTERTAINMENT INC. is a corporation incorporated in the State of Delaware conducting business throughout the United States, including the Central District of California. Its principal address is located at 21800 Oxnard Street, Suite 150, Woodland Hills, California 91367 in this District.

45.     Upon information and belief, Defendant AYLO GLOBAL ENTERTAINMENT INC. is a parent company for AYLO USA INCORPORATED

---

[7] *See* Ex. 6.

[8] Todd Spangler, *Pornhub Parent Company Changes Name to Aylo, Aimed at Giving Adult-Entertainment Purveyor 'Fresh Start'*, VARIETY (Aug. 18, 2023, 9:46 PM), https://variety.com/2023/digital/news/pornhub-parent-name-change-aylo-adult-entertainment-1235700312/.

and AYLO BILLING US CORP.

46.     Defendant AYLO USA INCORPORATED is a corporation incorporated in the State of Delaware conducting business throughout the United States, including the Central District of California. Its principal address is located at 21800 Oxnard Street, Suite 150, Woodland Hills, California 91367 in this District.  AYLO USA INCORPORATED has the same business address as MINDGEEK USA INCORPORATED.

47.     Upon information and belief, AYLO USA INCORPORATED is a wholly owned subsidiary of AYLO GLOBAL ENTERTAINMENT INC., or other entity previously owned by the MINDGEEK owners, either directly or through intermediary companies that were also under the control of MINDGEEK.

48.     Defendant AYLO BILLING US CORP. is a corporation incorporated in the State of Delaware conducting business throughout the United States, including the Central District of California. Its principal address is located at 21800 Oxnard Street, Suite 150, Woodland Hills, California 91367. AYLO BILLING US CORP. has the same business address as MG BILLING US CORP.

49.     Upon information and belief, AYLO USA INCORPORATED is a wholly owned subsidiary of AYLO GLOBAL ENTERTAINMENT INC., or other entity previously owned by the MINDGEEK owners, either directly or through intermediary companies that were also under the control of MINDGEEK.

50.     Upon information and belief, AYLO BILLING US CORP. is a credit card processing company that that works to operate and/or manage the subscription services for one or more of Defendants' pornographic websites.

**C.     SUCCESSOR LIABILITY**

51.     Herein, Defendants and/or MindGeek refers to the above referenced entities in paragraphs 29-50 and all of their successor companies, parent companies, subsidiaries, affiliates, directors, and/or officers.

52.     Over many years, MindGeek's corporate grouping has included more

COMPLAINT FOR DAMAGES

than one hundred fifty (150) subsidiaries, sister companies, successor companies around the world, including the United States.[9]

53.     The complete details of MindGeek's complex, ever-changing network of related companies is unknown to Plaintiff at this time. On information and belief, MINDGEEK S.A.R.L. exercised the complete control and direction of the finances, policy, and business practices of the MindGeek entities, but as averred above, the names and/or structure of the business entities have recently changed as a result of MindGeek's rebranding to AYLO in August 2023.

54.     MindGeek entities are or were the alter egos of each other operating as a single business enterprise to produce, distribute, and monetize pornography on the Internet, commingling its assets in order to shelter and avoid liabilities and in an effort to hide the identity of all of its owners and investors.

55.     All Defendants are jointly and severally liable in this action as alter egos of the other.  In doing all things alleged herein, Defendants acted within the course and scope of their authority as agents, servants, representatives, partners, joint venturers, affiliates, successors in interest, parents, subsidiaries, and/or employees and with the permission authorization, consent, and ratification of each other.

56.     MindGeek transferred the ownership of corporate stock and/or shares to Ethical Capital Partners.

57.     On information and belief, there was inadequate consideration for the transfer of the stock/shares to Ethical Capital Partners.

58.     Ethical Capital Partners is a mere continuation of the business of MindGeek.

59.     There has been a continuation of MindGeek's officers, directors, management, and/or shareholder interests in the Ethical Capital Partners entity.

---

[9] *See MindGeek Corporate Grouping*, OPEN CORPORATES, https://opencorporates.com/corporate_groupings/MindGeek/companies (last visited Sep. 8, 2023).

60.     Plaintiff has suffered damages and losses by said transfer of stock/shares to Ethical Capital Partners.

61.     As the mere continuation of MindGeek's business, Ethical Capital Partners, as well as Aylo Global Entertainment Inc., Aylo USA Incorporated, and Aylo Billing US Corp. are liable to Plaintiff for the prior wrongdoing of MindGeek.

62.     On information and belief, MindGeek and its successors in interest, subsidiaries, and sister companies have utilized the United States judicial system to enforce their intellectual property, contractual, and other rights relating to the business they systematically and routinely conduct within the United States, including their pornographic websites.

63.     In violation of both federal and state laws, Defendants, together and/or individually, facilitated, participated, and benefitted from the GirlsDoPorn sex trafficking venture.  Defendants then further exploited Plaintiff through their own advertising and distribution of the unlawful sex trafficking videos.

64.     GirlsDoPorn sex traffickers and Defendants worked together to earn a profit from commercial sex acts involving Plaintiff.

## JURISDICTION AND VENUE

### A.     SUBJECT MATTER JURISDICTION

65.     This action is brought pursuant to various federal and state statutes, including the federal Trafficking Victim Protection Reauthorization Act, 18 U.S.C. § 1591, *et seq*. and The Lanham Act, 15 U.S.C. § 1125(a). This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff proceeds under federal law.

66.     This Court also has supplemental jurisdiction over the California state law claims set forth below pursuant to 28 U.S.C. § 1367(a) because all of the claims alleged herein are part of a uniform pattern and practice and form part of the same case or controversy.

### B.    DIVERSITY JURISDICTION

67.    The Court has original jurisdiction under 28 U.S.C. § 1332(a) because: (1) the matter is controversy exceeds the sum or value of $75,000, exclusive of interest and costs; and (2) the matter is controversy is between citizens of different states.

### C.    PERSONAL JURISDICTION

68.    The Court may properly exercise personal jurisdiction over all Defendants. MINDGEEK USA INCORPORATED and MG BILLING US CORP. both registered with the State of California to transact business in California, transacted business in California, and are domiciled and maintain their principal places of business at 21800 Oxnard Street, Suite 150, in Woodland Hills, California, 91367, but are or were substantially controlled by MINDGEEK S.A.R.L., MG FREESITES, LTD., and/or 9219-1568 QUEBEC, INC. .

69.    Aylo Global Entertainment Inc., Aylo USA Incorporated, and Aylo Billing US Corp. have all registered with the State of California to transact business in California, transact business in California, and are domiciled and maintain their principal places of business at the same location as MindGeek's principal place of business: 21800 Oxnard Street, Suite 150, Woodland Hills, California  91367.

70.    Upon information and belief, Aylo Global Entertainment Inc., Aylo USA Incorporated, and Aylo Billing US Corp. are successor companies to the MindGeek Defendants as a result of MindGeek's renaming and rebranding to AYLO recently in August 2023.

71.    Each of the Defendants maintains minimum contacts with the United States and the State of California, such that maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice.  As stated above, MindGeek operates as one business and each of the Defendants acts as the alter ego of the others.

72.    Defendants have purposefully availed themselves of this Court's jurisdiction by virtue of their registration to transact business in California, presence

and operations in this District, by their participation in and furtherance of the GirlsDoPorn's sex trafficking venture, and by transacting business in this District, and by virtue of their improper and unlawful acts committed in this District, all of which have caused Plaintiff's damages. There is a substantial nexus between Plaintiff's claims and Defendants' activities in the State of California and this District.

73. More specifically, Defendants partnered and profited with the California-based GirlsDoPorn sex traffickers as part of MindGeek's Content Partner Program and Viewshare Program to split revenues that Defendants generated by advertising, marketing, selling, and exploiting videos and images it solicited from GirlsDoPorn featuring Plaintiff and other victims of the sex trafficking venture.

74. On information and belief, Defendants processed revenue for and made monthly payments to the GirlsDoPorn traffickers representing GirlsDoPorn's share of revenues Defendants received by advertising, marketing, selling, and exploiting the sex trafficking videos and images of Plaintiff and other victims on Defendants' sites.

75. On information and belief, MG BILLING US CORP. processed payments for the videos of Plaintiff and other victims published as part of MindGeek's Content Partner and Viewshare Programs and received affiliate fees for subscriptions purchased on the GirlsDoPorn sites after MindGeek redirected users from one of its tube sites to GirlsDoPorn's sites.

76. On information and belief, 9219-1568 QUEBEC, INC. hired and managed employees that published, maintained, edited, and optimized GirlsDoPorn's videos, including videos of Plaintiff, on MindGeek's sites.

77. MindGeek has previously been sued regarding its participation in the GirlsDoPorn sex trafficking venture, among other sex trafficking lawsuits, and has accepted service of such lawsuits in the State of California, including in this District.[10]

---

[10] *See* Exs. 3-6.

### D.    VENUE

78.    Venue is proper in this District under 28 U.S.C. §§ 1391(c)(2) and (d) because MindGeek has registered to transact business in California, listing and maintaining its principal office situated in this District, and conducting substantial business in this District.

79.    MindGeek directly participated in and knowingly aided, abetted, and facilitated the GirlsDoPorn sex trafficking venture through its actions by contracting with and maintaining a business partnership with the perpetrators of the subject sex trafficking, and on information and belief, by utilizing financial institutions within this District as part of that relationship.

80.    MindGeek accepted service for a prior sex trafficking related civil lawsuit in this District.

81.    On information and belief, MindGeek employs or has employed persons at its office in Los Angeles within this District.

### THE TRAFFICKING VICTIMS PROTECTION ACT

82.    In 2000, Congress passed the Trafficking Victims Protection Act ("TVPA"), a comprehensive law in the United States to penalize the full range of human trafficking offenses.[11]

83.    Congress reauthorized the Trafficking Victims Protection Act in 2003,[12] and in 2008, broadening its scope to include third parties.[13] In doing so, the Trafficking Victims Protection Reauthorization Act ("TVPRA") created a civil cause

---

[11] *See* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 102(a), 114 Stat. 1464, 1467 (2000).

[12] *See* Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, § 4(a)(4)(A), 117 Stat. 2875, 2878 (2003).

[13] William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 (2008).

of action, codified at 18. U.S.C. § 1595 and permits a party to bring a civil claim against perpetrators and against persons or entities who, although not the direct perpetrator, knowingly benefit, or attempt or conspire to benefit, financially or by receiving anything of value from participation in a venture which that person or entity knew or should have known was violating the TVPRA.[14]   Congress has thus consistently expanded the TVPRA in an effort to deter sex trafficking worldwide and provide a broad remedy for survivors against actors like Defendants.

84.    The TVPRA outlaws sex trafficking activities that affect interstate or foreign commerce or take place within the territorial jurisdiction of the United States. The crime of sex trafficking is defined as knowingly recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting by any means a person to engage in a commercial sex act knowing or in reckless disregard of the fact that force, threats of force, fraud, coercion, or any combination thereof were used in the process.[15]

85.    "The term 'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person."[16]

86.    Under federal law, criminal sex trafficking also occurs whenever a person knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in sex trafficking as defined above. 18

---

[14] 18. U.S.C. § 1595(a).  Congress also amended the Fight Online Sex Trafficking Act ("FOSTA"), Section 230, to prevent perpetrators and online companies from seeking immunity in Section 1595 lawsuits and provided: Section 230 shall have "[n]o effect on sex trafficking law" and shall not "be construed to impair or limit. . .any claim in a civil action brought under section 1595 of title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title." 47 U.S.C. 230(e)(5).  The amendment to Section 230 is retroactive, applying "regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after ... enactment." Pub. L. No. 115-164, 132 Stat. 1253 § 4(b)..

[15] 18 U.S.C. § 1591(a)(1).

[16] 18 U.S.C. § 1591(e)(3).

1   U.S.C. § 1591(a)(1) & (2).

2       87.   The TVPRA also forbids, among other things, conspiring to violate 18

3   U.S.C. § 1591.[17]

4       88.   The TVPRA is to be construed broadly because it serves a remedial

5   purpose and uses intentionally broad language. In each reauthorization since its

6   enactment, Congress has maintained a strong intent to provide adequate protection

7   and recovery for victim survivors of trafficking against "the enormous profitability of

8   this industry."[18]

9       89.   Thus, unlike the criminal penalties provision in the TVPRA, the civil

10   remedies provision is governed by a "constructive knowledge" standard.   This

11   provision allows a civil action to be brought not only against a person or entity who

12   directly violates the TVPRA, but also against a person or entity who participated in a

13   venture that the person or entity *should have known* had engaged in illegal sex

14   trafficking. 18 U.S.C. § 1595(a).   This expansive provision is known as the

15   "constructive knowledge" provision, which provides an alternative to proving actual

16   knowledge as part of civil damages claims.

17       90.   In the following paragraphs, wherever Plaintiff alleges that Defendants

18   acted with knowledge, or in reckless disregard of the fact, that the GirlsDoPorn sex

19   trafficking venture used fraudulent or illegal practices, means of force, threats of

20   force, coercion, intimidation, harassment, and/or abuse of process to cause a person

21   to engage in commercial sex acts, Plaintiff also alleges that, at a bare minimum,

22   Defendants should have known that the GirlsDoPorn sex trafficking venture had used

23   such means to engage in illegal sex trafficking in violation of 18 U.S.C. §§ 1591-

24   ─────────────────

[17] *See* 18 U.S.C. § 1594.

25

26   [18] *Trafficking In Persons: The Federal Government's Approach to Eradicate This Worldwide Problem: Hearing on H.R. 2620 Before the Subcomm. On Human Rights and Wellness of the H Comm. on Gov't Reform*, 108th Cong. (2004) (statement of Rep. Dan Burton).

27

28

1594.  In other words, Defendants had "constructive knowledge" of GirlsDoPorn's sex trafficking.

91.    Plaintiff also alleges herein that Defendants were willfully blind to the fact that MindGeek was participating in and facilitating GirlsDoPorn's sex trafficking venture, that Plaintiff was a victim of sex trafficking within the meaning of 18 U.S.C. § 1591, and that Plaintiff is entitled to bring this civil action under 18 U.S.C. § 1595.

## **FACTUAL ALLEGATIONS**

### **A.    GirlsDoPorn Engaged in Unlawful and Deceptive Business Practices to Recruit Plaintiff and Other Sex Trafficking Victims.**

92.    Michael James Pratt launched the GirlsDoPorn website, GirlsDoPorn.com, in 2009.   For the next ten years,  Pratt and several other GirlsDoPorn principals and staff ran a sex trafficking venture in San Diego, California.

93.    GirlsDoPorn trafficked hundreds of high school and college-aged women for sex under the false pretext of a modeling shoot.

94.    GirlsDoPorn recruited young women through false advertising claiming to offer new modeling opportunities which often included misleading links to websites like www.beginmodelling.com or modelinggigs.com.   These sham websites lured aspiring models into providing GirlsDoPorn with their personal information and contact details.

95.    GirlsDoPorn hid its true entity's name, websites, and unlawful business from the young women who answered its ads.

96.    Then, upon the victim's arrival for the photoshoot, GirlsDoPorn's principals used drugs, alcohol, fraud, coercion, intimidation,  and threats to force the young women to film pornographic videos under the additional false pretense that the videos would remain private, off the Internet, and never be seen in North America.

97.    For over a decade, GirlsDoPorn lied and coerced hundreds of women through its scheme.   It then partnered with MindGeek, utilizing MindGeek's vast

resources and network, to publish and profit from the unlawful videos across numerous online pornography websites.

### 1.    *GirlsDoPorn Targeted Young Women Who Did Not Want a Career in the Adult Film Industry.*

98.    GirlsDoPorn's unlawful venture required it to recruit and convince a high volume of high school and college-aged women to fly to San Diego under false pretenses and then perform for pornographic videos. To accomplish this, GirlsDoPorn engaged in numerous methods of deceit, fraud, manipulation, and coercion to obtain the pornographic content they needed.

99.    GirlsDoPorn's business was premised on the construct that the women in the videos were not professional porn stars but were amateur college-aged women filming pornography for the first and only time.  Subscribers were meant to be left with the impression that the women in GirlsDoPorn's videos were everyday women that they could encounter in their communities, campuses, and daily lives.[19]

100.    In accordance with this one-time-only amateur paradigm, GirlsDoPorn's business was dependent on recruiting a constant stream of new models in order to generate fresh website content.[20]

101.    The recruited models  did not intend to pursue a career in adult entertainment.  Rather, the women were mostly students with careers ahead of them who never  even considered solicitations to film a pornographic video

102.    Thus, GirlsDoPorn used fraudulent practices to facilitate its recruitment. GirlsDoPorn took considerable, calculated steps to falsely assure prospective models that their videos would never be posted online, come to light in the United States, or be seen by anyone who might know them.[21]

---

[19] See Ex. 2, at 2-3.

[20] *Id.*

[21] *Id.*

103.   GirlsDoPorn went so far as to hire actresses to pose as previous models and assure new recruits of their privacy and security.   These paid "references" provided prospective models with false comfort that the experience was safe and enjoyable, and that the fake references' videos had never appeared online or been discovered by anyone in the references' lives.[22]

104.   Once a newly-recruited woman flew to San Diego, she found herself alone in a hotel room with two or more men about to shoot a pornographic video.  At this point, GirlsDoPorn had her sign documents containing dense and ambiguous legalese, which they falsely described as being the written version of what she had already agreed to.[23]

105.   GirlsDoPorn acted to pressure the woman to sign the documents quickly without reading them and engaged in other deceptive, coercive, and threatening behavior to secure their signatures, including plying the woman with drugs and alcohol.[24]

106.   After illegally filming the woman engage in forced  sex acts, GirlsDoPorn posted the videos on MindGeek's websites and advertised for its own online subscription platforms.[25]

107.   Hundreds of women from various cities throughout the United States and Canada, including Plaintiff, were recruited to appear in GirlsDoPorn videos based upon this system of force, fraud, and coercion.[26].

108.   These unlawful videos generated millions of dollars in revenue for

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

COMPLAINT FOR DAMAGES

GirlsDoPorn and MindGeek at the expense of countless young women's lives.[27]

### B. MindGeek and GirlsDoPorn used Forceful, Fraudulent, Coercive, and Unlawful Business Practices to Traffic Plaintiff for Sex.

109. Throughout adolescence, Plaintiff professionally modeled clothes for agencies and companies such as Kohl's and Champion.

110. While a high school student in Colorado, Plaintiff participated in the Miss Teen Colorado pageant and was first runner up.

111. After the pageant and her high school graduation in 2013, Plaintiff wanted to pursue fashion and modeling.

112. Similar to other GirlsDoPorn victims, Plaintiff saw a Craigslist ad for paid modeling jobs and inquired via email correspondence.

113. Plaintiff relayed her interest in the modeling opportunity and agreed to partake in one photoshoot. GirlsDoPorn then paid for Plaintiff's airline tickets and hotel to travel to San Diego for the modeling photoshoot.

114. Plaintiff, at the tender age of eighteen (18) years old, arrived in San Diego for a headshots and clothes modeling photoshoot she believed would help her career.[28]

115. GirlsDoPorn had taken a particular interest in Plaintiff because of her physical appearance and Plaintiff's success in the Miss Teen Colorado pageant. They stated Plaintiff had the "right looks."

116. Plaintiff learned of GirlsDoPorn's true intention only after traveling from her home state. Pratt and his conspirators, including Andre Garcia, picked Plaintiff up from the airport and began to coerce Plaintiff into allowing live action filming of adult content.

---

[27] *Id.*

[28] "Headshot" refers to a photograph that is taken of a person's head and face, and sometimes features the person's shoulders and chest. A headshot is often taken for submission to professional modeling and acting jobs.

117.   Rather than the mere headshots and clothing photoshoot that she had agreed to fly to San Diego to do, Pratt began demanding that Plaintiff film nude and sexually explicit videos.   When Plaintiff refused, Pratt and his conspirators immediately pressured her and plied her with booze and pills to soften her reluctance.

118.   Plaintiff told Pratt that she did not want to participate in amateur pornography. To convince her otherwise, Pratt and Garcia told Plaintiff that the video would only be on DVD and would only be used in Australia.  Pratt and Garcia falsely represented to Plaintiff that the video would **not** be used in any other manner, would **not** be released in the United States, and would **not** be posted on the Internet.

119.   Pratt and Garcia continued to pressure Plaintiff to consume alcohol and marijuana in order to relax.

120.   Pratt and Garcia said they would take Plaintiff to a hotel to film the video. On the way, they picked up a third conspirator, Matthew Wolfe.

121.   During the drive, Pratt gave Plaintiff what appeared to be a contract and told her to sign it.  Plaintiff was not able to read the document in the car or in her intoxicated condition, although she saw the words "DVD" and "Australia" in larger font than the rest of the words in the document.

122.   Plaintiff was not provided a copy of the document.

123.   Plaintiff then found herself in a hotel room with four (4) strange men: Pratt, Wolfe, Garcia, and one other conspirator who worked on lighting for the production.

124.   Pratt took Plaintiff's cell phone and put it in his pocket.  Pratt refused to give Plaintiff back her cell phone until they were finished filming the video.

125.   Plaintiff was restricted to the bed area in the hotel room.

126.   The hotel room was filled with equipment.  The bathroom and hotel door were both blocked with lights, equipment, and cases for equipment.

127.   Garcia was the male performer for the video.

128.   While Plaintiff was trapped in the hotel room and in an intoxicated state,

Pratt and his conspirators deceived, coerced, and forced Plaintiff to perform sexual acts on film.

129.   Production of the video took approximately 9-10 hours, and included protracted filming of Plaintiff's non-consensual sex—*i.e* rape.

130.   Plaintiff started bleeding due to the repeated and violent nature of the acts to which she was subjected.

131.   When the bed sheets became covered with blood, Pratt just covered the stained sheets with other blankets or flipped blankets to the clean side.

132.   Pratt had a demanding, aggravated, and aggressive demeanor during the video production process.

133.   Plaintiff became upset, started crying, and repeatedly asked to stop.

134.   Plaintiff told Pratt, Wolfe, and Garcia she wanted to leave.  The three men reiterated that she was not permitted to stop the production or to leave the hotel room until they got the footage they wanted for the video.

135.   Plaintiff then tried to move the equipment blocking the exit door.

136.   Furious, Pratt  grabbed Plaintiff and threw her on the bed.

137.   Pratt yelled and cursed at Plaintiff calling her a "stupid b*tch" and "f*cking slut."

138.   Plaintiff felt afraid for her life trapped in the hotel room.

139.   To get Plaintiff through the production, Pratt and Garcia continued to force Plaintiff to drink more alcohol.  They also gave her Xanax.

140.    Production of the video continued without Plaintiff's  consent as they filmed her in an intoxicated state.

141.   Prior to that evening, Plaintiff had no knowledge of the GirlsDoPorn business or GirlsDoPorn.com and GirlsDoToys.com websites.

142.   In August 2013, Plaintiff began her freshman year of college.  Pratt pursued Plaintiff and demanded she make additional videos.  When Plaintiff told Pratt no and refused to comply, Pratt resorted to blackmail, fear, intimidation, and threats

1    of force against Plaintiff and her family.

2         143.   Pratt threatened Plaintiff that he would release her video to the Internet

3    if Plaintiff did not comply with his demands.

4         144.   Pratt also made threatening statements to Plaintiff about knowing her

5    personal information, such as where she lived and her social security number.

6         145.   Pratt threatened Plaintiff's life if she did not agree and texted her:



16        146.   Plaintiff told Pratt that she did not want or consent to the release of the

17   video of her and asked him to "have a heart."  Pratt did not care.

18        147.   Plaintiff contacted Garcia about Pratt's blackmail and threats to her life.

19   Garcia told Plaintiff that she should agree to do a second video because Pratt would

20   follow through with releasing the video if Plaintiff did not comply.

21        148.   Plaintiff was afraid of Pratt, felt threatened by him, and feared for her

22   life and the lives of her family and friends.

23        149.   Out of fear and under duress, Plaintiff participated in additional videos.

24        150.   During filming, the men again took Plaintiff's cell phone.

25        151.   In addition to the filmed acts, Plaintiff was subjected to further sexual

26   harassment and assault from the GirlsDoPorn conspirators.

27        152.   Without consent, Wolfe touched and tried to kiss Plaintiff telling her she

28   was beautiful.

COMPLAINT FOR DAMAGES

1      153.   Plaintiff rejected Wolfe's advances.

2      154.   Wolfe then told Plaintiff she could have her cell phone back if she would

3  kiss him and "touch his d*ck."

4      155.   Plaintiff struggled throughout filming the next video with Garcia.

5  Plaintiff repeatedly asked to stop filming.

6      156.   Halfway through the video, Pratt erupted in anger, yelling and cursing at

7  Garcia about Plaintiff.  Pratt broke a hotel lamp in his fit of rage.

8      157.   Terrified, Plaintiff made it into the hotel bathroom to try to find refuge.

9  However, Pratt followed her and would not leave her alone.

10     158.   In the hotel bathroom, Pratt showed Plaintiff that he had a gun in a holster

11  on his hip.  The gun had been previously hidden and covered by his shirt.

12     159.   Plaintiff was again told that she was not allowed to stop the production

13  or leave the hotel room before they got the footage they wanted for the video.

14     160.   Plaintiff was again forced to consume alcohol, marijuana, and Xanax to

15  help her complete filming.

16     161.   When Plaintiff denied additionally taking oxycodone, Pratt and Garcia

17  put the drug in her drink which she refused.

18     162.   When the video was finally completed, Pratt still refused to let Plaintiff

19  leave.

20     163.   Pratt retrieved Plaintiff's belongings  and forced Plaintiff  to go back to

21  his home.

22     164.   In the car on the way to his home, Pratt forced Plaintiff to perform oral

23  sex on him.

24     165.   While Plaintiff was performing oral sex, Pratt took out his gun, put the

25  gun in Plaintiff's mouth, and forced her to suck on the gun.

26     166.   Once in Pratt's home, Pratt repeatedly sexually assaulted Plaintiff.

27     167.   Plaintiff saw that Pratt had many different guns out in the home and was

28  proud of them.

168.   Plaintiff cried while Pratt demeaned and cursed at her.

169.   Pratt, again, forced Plaintiff to perform oral sex on him.  During the act, Pratt grabbed his gun, forced the gun in Plaintiff's mouth, and made her suck on the gun a second time.

170.   Plaintiff felt trapped and afraid.  She felt she had no choice but to submit to Pratt's every demand or risk her life.

171.   In January 2014, while Plaintiff was in class at college, she received a text message from an unknown number stating: "Told you bitch."  Pratt followed through on his threat.

172.   Around that same time, Plaintiff received a text message from a friend saying that her pornographic video was on Twitter, the PornHub website, and multiple other pornography websites.

173.   Unfortunately, GirlsDoPorn had posted the first video of Plaintiff on MindGeek's network, and the video became wildly successful.

174.   MindGeek and GirlsDoPorn generated millions of dollars from Plaintiff's video.

175.   Greedy for more, Pratt, Wolfe, and Garcia continued to pursue Plaintiff with further threats, coercion, and force.  Plaintiff was deeply fearful of them and what they would do to her.

176.   GirlsDoPorn produced additional short solo videos of Plaintiff that were uploaded to MindGeek's network of sites.

177.   GirlsDoPorn published Plaintiff's full-length videos on its sites, GirlsDoPorn.com and GirlsDoToys.com, and on MindGeek's sites, in partnership with MindGeek as part of MindGeek's Content Partner and Viewshare Programs.

178.   Once published to the sites, GirlsDoPorn and MindGeek implemented an aggressive marketing strategy to obtain views, customers, and paid subscriptions. This marketing strategy included contacting Plaintiff's and other victims' communities, social circles, family, friends, teachers, classmates, employers, and/or

co-workers.

179.   Fox News, and other media sources released stories about Plaintiff.[29]

180.   Plaintiff was devastated. She has suffered, and continues to suffer, extreme emotional distress from Pratt's threats and MindGeek's global release of her videos.

181.   Plaintiff was harassed by other students while she attended class, walked to her dorm, and on the bus.  Plaintiff had to be escorted by campus security due to the harassment and threats.  Plaintiff often remained in her dorm room out of fear of going outside.

182.   Plaintiff was prescribed medication for severe distress and anxiety.

183.   Due to GirlsDoPorn's and MindGeek's publication, distribution, and advertising of Plaintiff's videos throughout MindGeek's global network, Plaintiff was forced to leave her university, return to her mother's home, and begin online classes at a community college.

184.   Nevertheless, Plaintiff was still recognized by teachers, students, and many others in the general public and suffered extreme emotional distress.

185.   Plaintiff lost jobs in humiliating ways when customers and co-workers

---

[29] *See, e.g.*, Nadine DeNinno, *Kristy Althaus Porn Video Resurfaces, Miss Teen USA Erases 2012 Colorado Runner-Up From Page [VIDEO]*, INTERNATIONAL BUSINESS TIMES  (Feb. 4, 2014, 9:55 AM), https://www.ibtimes.com/kristy-althaus-porn-video-resurfaces-miss-teen-usa-erases-2012-colorado-runner-page-video-1553151; *Disgraced former Miss Colorado Teen contestant reportedly making porn*, DAILY NEWS (Jun. 17, 2014, 3:50 PM, updated Jan. 9, 2919, 9:11 PM), https://www.nydailynews.com/news/national/colorado-teen-contestant-reportedly-making-porn article-1.1833231; *Miss Teen Colorado runner up Kristy Althaus turns porn star*, NEWS.COM.AU (Jun. 19, 2014, 4:57 PM), https://www.news.com.au/lifestyle/beauty/miss-teen-colorado-runner-up-kristy-althaus-turns-porn-star/newsstory/1ff3e9f28bb 3adb87b96e80de7ac2c8d; *Former Miss Teen Colorado in second porn video, report says*, FOX NEWS (Jun. 18, 2014, updated Apr. 5, 2016), https://www.foxnews .com/entertainment/former-miss-teen-colorado-in-second-porn-video-report-says; *Beauty queen turns to life of porn*, YAHOO NEWS AUSTRALIA (Updated Mar. 31, 2018),https://au.news.yahoo.com/beauty-queen-turns-to-life-of-porn-24279669.html

1  recognized her and her association with GirlsDoPorn and MindGeek.

2      186.  Plaintiff lost employment and employment opportunities because
3  employers did not want her associated with their businesses and/or brands.

4      187.  Plaintiff was stripped of her title as First Runner Up in the Miss Teen
5  Colorado pageant.

6      188.  Six months after the release of the first video, GirlsDoPorn and
7  MindGeek released additional videos of Plaintiff, without her authorization and
8  consent, again implementing an aggressive marketing strategy and exploiting
9  Plaintiff's name, identity, images, videos, and former association with the Miss
10  Colorado pageant for their own financial gain and profit.

11      189.  Plaintiff's video was the second most popular video on all of
12  MindGeek's PornHub website for the year 2014:



25      190.  Not only did Plaintiff have to endure hours of sexual assault while they
26  filmed every second, then, in the interest of profit, MindGeek gave GirlsDoPorn the
27  resources and distribution channels so that millions could view it for their own sexual
28  gratification.

191.   Plaintiff contacted MindGeek multiple times in an effort to prevent the further distribution and advertising of the GirlsDoPorn videos.

192.   Plaintiff told a representative that the posting of her content online was done without her consent.

193.   The MindGeek representative disregarded Plaintiff and even threatened legal action against Plaintiff if she pursued removal of her videos.

194.   Thus, MindGeek continued to host and use GirlsDoPorn's videos, and Plaintiff's name, images, likeness, and identity, without her authorization and consent, and for its own financial gain.

195.   It was not until years later in October 2019 when the Department of Justice seized and shut down GirlsDoPorn that MindGeek finally—but only temporarily—removed Plaintiff's videos.

### C.   MindGeek, GirlsDoPorn, and the Online Pornography Industry Operate to Maximize Views, Customer Subscriptions, and Profits.

196.   The online pornography industry mainly consists of two types of websites: paysites and freesites.  Paysites are websites that require the customer to pay to view the pornographic content.

197.   Freesites, also known as tube sites, have no fee and are shorter five to ten-minute clips of longer pornographic videos.  Companies use freesites to attract significant web traffic with the goal of having potential customers purchase monthly subscriptions on the paysites.

198.   Generally, freesites earn money through advertisement sales and by partnering with paysites through affiliate programs operated by the payment processing companies who process subscribers' payments on paysites.

199.   When a freesite obtains a subscribing customer for a paysite, the payment processing company splits the subscriber's monthly payment between the paysite and freesite affiliate, often a 50/50 revenue split arrangement.

200.   The money earned by the freesite for referring customers to paysites is

called an affiliate fee.

201.   GirlsDoPorn operated two paysites, GirlsDoPorn.com and GirlsDoToys.com, where it sold content by offering its customers access to libraries of full-length videos featuring Plaintiff and other victims for $30 to $60 per month.

202.   MindGeek owns and operates hundreds of pornographic websites, including both paysites and freesites (tube sites).

203.   On information and belief, MindGeek controls the majority of pornography on the Internet through its various entities and sites.  Its global platform and distribution channels for pornographic content is vast and world-wide.

204.   MindGeek's most visited tube site is www.PornHub.com (PornHub).

205.   In 2019, PornHub had approximately 42 billion visits with 39 billion searches.  Averaging 115 million visits per day, Pornhub accommodated uploads for 6.83 million new videos that same year.[30]

206.   In addition, MindGeek owns and/or operates other popular tube sites, including www.YouPorn.com, www.RedTube.com, www.XTube.com, and www.Tube8.com.

207.   MindGeek also owns several subsidiaries, affiliates, and/or paysites such as Brazzers, Babes.com, Digital Playground, Reality Kings, and Twistys and works to promote views, subscriptions, and revenue to each of the sites.

208.   MindGeek's business model is predicated on maximizing views and traffic to its sites.

209.   On information and belief, when MindGeek is not creating videos and images for content, it is developing, designing, editing, and controlling storylines, themes, images, titles, text, keywords, tags, advertising, and other aspects of its sites.

210.   Keywords and tags are essential for customers' search engine

---

[30] *See The 2019 Year in Review*, PORNHUB INSIGHTS (Dec. 11, 2019),  https://www.PornHub.com/insights/2019-year-in-review.

optimization on MindGeek's sites.

211.  MindGeek has a "Search Engine Marketing" team dedicating to "develop[ing] successful strategies to ensure top-ranking in search engine traffic."[31]

212.  MindGeek operates, manages, and promotes its own numerous businesses and sites, as well as the sites of its Content Partners.

213.  MindGeek accepted GirlsDoPorn into its Content Partner Program and Premium Viewshare Program.

214.  By accepting GirlsDoPorn into its Content Partner and Viewshare Programs, MindGeek agreed to and conducted business with Pratt's GirlsDoPorn sex trafficking venture to obtain new pornographic content and maximize profit.

> **D.    MindGeek Knowingly Participated in the GirlsDoPorn Sex Trafficking Venture, Financially Benefited Therefrom, and Continued the Unauthorized Use of Plaintiff's Name, Images, Videos, and/or Identity for Its Own Financial Gain.**

215.  Through its partnership with GirlsDoPorn, MindGeek knowingly participated in, facilitated, promoted, supported, and assisted the GirlsDoPorn sex trafficking venture.

216.  As one of the largest, if not the largest, online pornography companies in the world, MindGeek's partnership provided GirlsDoPorn's criminal venture with a global platform and distribution channel for its unlawful videos.

217.  GirlsDoPorn created accounts on MindGeek's tube sites and began posting its videos in or about 2009.

218.  In 2011, GirlsDoPorn applied, and MindGeek selected GirlsDoPorn to participate in MindGeek's Content Partner Program and Viewshare Program.

219.  MindGeek's Content Partner Program is described as follows:

> The Content Partner Program is designed for studios with

---

[31] *Services at MindGeek: Search Engine Marketing*, MINDGEEK, https://www.mindgeek.com/services/#search-engine-marketing (last visited Aug. 2023);

a pay-site to expose their content to millions of visitors. Once partnered, you receive a personalized channel that includes free ad space both on your channel and on your videos.  Through the use of video features on your homepage, your content is promoted to our users which will direct traffic back to your pay-site with the intention of converting them into  paying members.  In turn, we would receive a share of this revenue through your affiliate program.  There is no compensation based on views in this program.[32]

220.  When GirlsDoPorn became a partner in MindGeek's Content Partner Program, MindGeek and its representatives created a "channel" on MindGeek's tube sites centralizing GirlsDoPorn's videos in a single location where MindGeek's viewers and potential customers were able to search the channel and subscribe to it for a fee.

221.  MindGeek also offers Content Partners "The PornHub Playbook: How to make money with Pornhub" Content Partners Guide to help Content Partners maximize profits with Pornhub and exposure to the Content Partner's brand.

222.  The Content Partners Guide states: "Our knowledgeable and friendly team will walk you through every step of the way.  Contact us and start promoting your brand."[33]

223.  While MindGeek's tube sites are predominately freesites which earn revenue through advertising and affiliate fees, portions of MindGeek's tube sites also act as paysites through MindGeek's Viewshare Program for premium members.

224.  MindGeek's Viewshare Program is described as:

The Viewshare program is designed to earn you revenue based on the number of views your content receives.  In

---

[32] *See What is the Content Partner Program?* PORNHUB, https://help.pornhub.com/hc/en-us/articles/4419878848019-What-is-the-Content-Partner-Program (last visited Sep. 8, 2023).

[33] PORNHUB, THE PORNHUB PLAYBOOK: HOW TO MAKE MONEY WITH PORNHUB (Content Partners Guide), v.2.6 (Sep. 6, 2019, 3:45 PM).

> this program you will upload full-length, HD videos which are locked behind our paywall, and you are compensated every time a Premium member watches your video. While Premium is an ad-free environment, partners receive a prominent "Join" button on their channel and below their videos to drive traffic back to their pay-site.[34]

225.   As a Content Partner, MindGeek's representatives actively worked with GirlsDoPorn and began advertising, promoting, marketing, selling, and exploiting videos featuring GirlsDoPorn's sex trafficking victims, including Plaintiff, on its websites to keep paying customers and gain new customers.

226.   MindGeek took many concrete steps to aid and participate in the GirlsDoPorn sex trafficking venture, generally, and the sex trafficking of Plaintiff by, *inter alia*:

(a)   Providing GirlsDoPorn access to MindGeek's world-wide distribution channels so that both MindGeek and GirlsDoPorn could profit through the dissemination of videos depicting Plaintiff's sexual assaults;

(b)   Partnering with GirlsDoPorn through its Content Partner Program and Viewshare Program;

(c)   Providing GirlsDoPorn with MindGeek's global exposure, and the financial lifeline to sustain its criminal venture;

(d)   Uploading, or permitting the uploading of, Plaintiff's sex trafficking videos to the GirlsDoPorn and GirlsDoToys channels on MindGeek's sites;

(e)   Uploading Plaintiff's sex trafficking videos to the vast collection of MindGeek's pornography websites including, among other sites, PornHub.com, YouPorn.com, RedTube.com, XTube.com, and/or Tube8.com;

---

[34] *See What is the Viewshare Program?* PORNHUB, https://help.pornhub.com/hc/en-us/articles/4419891330195-What-is-the-Viewshare-Program (last visited Sep. 8, 2023).

(f) Providing MindGeek employee representatives to assist GirlsDoPorn in maximizing exposure, views, subscriptions, and revenue from videos featuring Plaintiff and other GirlsDoPorn victims;

(g) Assisting GirlsDoPorn in monetizing the sex trafficking videos by acting as an affiliate for GirlsDoPorn.com, GirlsDoToys.com, and other paysites;

(h) Actively marketing and/or suggesting GirlsDoPorn videos and content to users of MindGeek's tube sites and/or paysites;

(i) Hyperlinking, marketing, advertising, promoting, selling, and/or exploiting videos featuring victims of GirlsDoPorn's sex trafficking venture, including Plaintiff;

(j) Creating, developing, and designing trailers, advertisements, titles, tags, descriptions, images, and/or other content for GirlsDoPorn videos and channels, including Plaintiff's videos and content;

(k) Providing search engine optimization services to GirlsDoPorn and its customers suggesting Plaintiff's videos to users;

(l) Conducting and/or facilitating financial transactions and distributing funds to GirlsDoPorn for the illegal videos and content;

(m) Sharing revenue and profits with GirlsDoPorn;

(n) Permitting users to download GirlsDoPorn sex trafficking videos which could then be uploaded to any other website or otherwise exploited;

(o) Refusing to remove GirlsDoPorn's sex trafficking videos when Plaintiff and numerous other victims complained to MindGeek;

(p) Willfully ignoring the complaints of Plaintiff and numerous other victims that the sex trafficking videos were uploaded and used without their authorization and consent;

(q) Re-posting and/or republishing GirlsDoPorn's sex trafficking videos after previous removal;

(r) Continuing to use Plaintiff's videos, name, images, and/or identity through 2023, without authorization or consent, for its own financial gain and profit; and

(s)  Failing  to  report  the  GirlsDoPorn  sex  trafficking  venture  to  law enforcement.

227.   Having accepted GirlsDoPorn into its Content Partner Program and Viewshare Program, MindGeek directly participated in GirlsDoPorn's sex trafficking venture by willfully and actively promoting GirlsDoPorn videos, marketing the GirlsDoPorn brand, spreading GirlsDoPorn content throughout its vast network of pornography websites, and maximizing subscription sales and profits.

228.   MindGeek willfully and actively promoted Plaintiff's name, images, identity, and videos on PornHub and other sites, including a full feature advertisement of Plaintiff with a biography, Pornstar Rank, and other advertisements such as:

- SUPER SEXY BUSTY MISS TEEN COLORADO IN FIRST PORN EVER
- Miss Colorado Teen in her debut porno
- Kristy Althaus Miss Teen Colorado USA Sex Tape
- The Beauty Queen PMV (enjoy your 337 if you delete this again FBI)
- Kristy Althaus sucks and f*cks
- Hot busty Miss Teen Colorado in her first solo porn video

229.   On information and belief, Plaintiff's videos had hundreds of millions of views and generated millions of dollars for MindGeek and GirlsDoPorn.

230.   MindGeek and GirlsDoPorn purposefully promoted Plaintiff as Miss Teen Colorado which increased traffic, views, and subscriptions to her content on their sites.

231.   Pratt told Plaintiff that one of her videos had 300 million views.  He also showed her on his computer screen the number of views for her video on MindGeek's website.

232.   MindGeek and GirlsDoPorn sought to leverage Plaintiff's status as a beauty queen to drive internet traffic in their marketing and advertisements.

233.   On information and belief, MindGeek received millions of dollars in revenue through its partnership with GirlsDoPorn by, among other things, collecting

affiliate referral fees, advertisement sales, and revenue from MindGeek's own subscription websites.

234.   On information and belief, MindGeek's business benefitted substantially from the increased traffic to its tube sites driven by GirlsDoPorn fans and following.

235.   MindGeek wrongly profited from the sex trafficking and exploitation of Plaintiff and other GirlsDoPorn victims.

236.   MindGeek knew GirlsDoPorn was operating a sex trafficking venture by using fraud, coercion, intimidation, threats of force, and force as part of its customary business practices to cause women to film pornographic videos.  MindGeek learned this, in part, from GirlsDoPorn victims who repeatedly contacted MindGeek d/b/a PornHub and plead with its representatives to remove the content.

237.   In addition to Plaintiff who contacted MindGeek to inform it that her videos were online without her consent and to plead that the videos be removed from MindGeek's websites, numerous other victims did the same.

238.   One GirlsDoPorn victim wrote to MindGeek:

> I WAS SCAMMED. THIS COMPANY LIED TO ME ABOUT
> THIS BEING ON THE INTERNET! THEY TOLD ME IT
> WOULD ONLY BE AVAILABLE ON DVD IN AUSTRALIA.
> MY WORK FRIENDS AND FAMILY ALL KNOW AND
> THIS VERY LINK IS BEING SENT AROUND.  I WANT TO
> JUST DIE[35]

239.   Another GirlsDoPorn victim wrote to MindGeek:

> I was told this video went to a private viewer, and now it is all
> over the internet. I was lied to, and this isn't okay.  I have reached

---

[35] *See* Ex. 4, at 39.

out to them with no response.[36]

240.   Yet another GirlsDoPorn victim wrote to MindGeek:

That's what I am trying to explain is that I did not consent to being online!!!  :(((( me and other girls are being brutally harassed.[37]

241.   Plaintiff is informed and believes MindGeek received dozens, if not hundreds, of takedown requests from GirlsDoPorn victims, yet MindGeek never conducted an investigation of the repeated claims of fraud and coercion perpetrated by GirlsDoPorn.[38]

242.   Numerous GirlsDoPorn victims hired "takedown companies" who submitted hundreds of Digital Millennium Copyright Act ("DMCA") takedown requests on their behalf.[39]

243.   MindGeek's tactics to intimidate and stonewall Plaintiff resulted in MindGeek's continued use of Plaintiff's name, images, identity, and videos without Plaintiff's consent.

244.   Plaintiff has suffered severe harm to her person and reputation by the unlawful conduct of GirlsDoPorn and MindGeek, including loss educational and employment opportunities, chastisement, harassment, threats of force, and loss of friendships and special relationships.

**E.   Prior Courts Have Found GirlsDoPorn and MindGeek Criminally and Civilly Liable for Sex Trafficking.**

245.   GirlsDoPorn and MindGeek have faced both criminal and civil liability for their wrongful conduct.

246.   Federal authorities arrested and prosecuted Pratt and several other

---

[36] *Id.*

[37] *Id.* at 40 (sics in original).

[38] *Id.*

[39] *Id.*

COMPLAINT FOR DAMAGES

GirlsDoPorn conspirators for violations of the TVPRA.

247.   On October 9, 2019, the United States Attorney for the Southern District of California charged GirlsDoPorn's three principals—Pratt, Wolfe , and Garcia—and three other staff, with sex trafficking and conspiracy to commit sex trafficking pursuant to 18 U.S.C. § 1591.

248.   A grand jury indictment formally charged Pratt, Wolfe, and Garcia with these crimes.[40]

249.   Pratt fled the country but was arrested in Spain and is awaiting extradition to the United States.

250.   Wolfe and Garcia were arrested on or about October 9, 2019.

251.    Garcia pled guilty to conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1594(c), and sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a)(1) and (2).  He received a sentence of twenty (20) years and was ordered to pay a in restitution.[41] Wolfe remains in federal custody and is awaiting sentencing.

252.   In Garcia's criminal case, the Honorable Janis Sammartino found: Beginning in approximately 2013 and continuing up to October 2019, Garcia participated in a conspiracy with Michael James Pratt, Matthew Isaac Wolfe, Theodore Wilfred Gyi, Valerie Moser, and others, to engage in commercial sex acts using force, fraud and coercion.[42]

253.   The Court ordered that the coercive GirlsDoPorn contracts are void and

---

[40] *See United States v. Michael James Pratt*, Indictment, ECF No. 34, No. 19:CR-4488-JLS (S.D. Cal. Nov. 7, 2019), incorporated by reference as though fully set forth herein as Exhibit 7.

[41] *See United States v. Ruben Andre Garcia*, Restitution Order Redacted, ECF No. 270, at 2-4, No. 19CR4488JLS (S.D. Cal. Dec. 14, 2021), incorporated by reference as though fully set forth herein as Exhibit 8a.

[42] *Id.*

unenforceable, and additionally, ordered that all transfers, licenses, or leases to any third parties are void, that Plaintiff and other GirlsDoPorn victims hold superior right, title, and interest in their images, likeness, and videos, and Plaintiff and other victims shall have and recover all property GirlsDoPorn took from them, including images, likeness, videos, and copyrights.[43]

254.   Prior to the criminal proceedings, in June 2016, a civil action  was commenced against GirlsDoPorn in San Diego (the "State Court Action").

255.   The Court found that GirlsDoPorn's coercive contracts were invalid and unenforceable due to GirlsDoPorn's fraudulent scheme.[44] Further, the Court found GirlsDoPorn's representations to the victims were false. Contrary to GirlsDoPorn's explicit promises that the videos would never appear online, GirlsDoPorn published the videos on its paid subscription websites and many popular free MindGeek "tube" sites such as Pornhub.com.

256.   The Court explained that GirlsDoPorn also used extensive affiliate marketing and other techniques to maximize web traffic to their sites.

257.   Moreover, during the prior State Court Action, MindGeek was served with a subpoena for records, yet again explicitly informing MindGeek of GirlsDoPorn's unlawful business practices.  Nevertheless, MindGeek continued to host the videos of Plaintiff and other victims on its sites.

258.   Throughout the State Court Action, MindGeek continued to use Plaintiff's name and promote her as a "Miss Teen Colorado" to maximize customer views, subscriptions, and revenue.

259.   Furthermore, on information and belief, during the State Court Action, MindGeek attempted to acquire the GirlsDoPorn business.

260.   On information and belief, MindGeek prepared and/or submitted a letter

---

[43] *Id.* at 5.

[44] Ex. 2, at 3, 24-29, 144-160.

to acquire the GirlsDoPorn business.

261.   Despite MindGeek's knowledge of the State Court Action filed against GirlsDoPorn, it continued to partner with GirlsDoPorn until October 2019 when the Department of Justice shut down GirlsDoPorn's business and indicted its principals and staff, at which point, a company to partner with no longer existed.

262.   On April 27, 2020,  the Honorable Kevin A. Enright issued his  Final Statement of Decision in the State Court Action.[45]

263.   On December 15, 2020, MindGeek was sued in federal court by fifty (50) other GirlsDoPorn victims for MindGeek's participation in and promotion of the GirlsDoPorn sex trafficking venture ("the MindGeek Federal Action").[46]

264.   The prior MindGeek Federal Action was resolved through a settlement between the parties.[47]

265.   After the GirlsDoPorn State Court Action and the prior MindGeek Federal Action, MindGeek removed the GirlsDoPorn videos, including Plaintiff's videos, from the PornHub website.

266.   However, subsequent to 2021, MindGeek reposted and republished Plaintiff's videos, name, images, likeness and identity to its sites, without Plaintiff's consent, due to significant website traffic, customer views, subscriptions, and revenue the videos of Plaintiff generated for MindGeek.

267.   In November 2022, Plaintiff received notice from the United States Department of Justice, Federal Bureau of Investigation ("FBI"), that she was one of more than four hundred (400) victims of the GirlsDoPorn-MindGeek sex trafficking venture.

268.   MindGeek continued to host, distribute, and advertise Plaintiff's sex

---

[45] *See* Ex. 2.

[46] *See* Exs. 3-4.

[47] *See* Ex. 9.

1   trafficking videos through 2023.

2       269.   MindGeek continued to unlawfully use and misappropriate Plaintiff's

3   name, images, and identity well into this year for its own financial benefit and profit.

4       270.   MindGeek even mocked federal authorities when re-posting videos of

5   Plaintiff with new titles, such as "The Beauty Queen PMV (enjoy your 337 if you

6   delete this again FBI)."

7       271.   MindGeek knew it was partnering with, distributing revenue to, and

8   profiting from a sex trafficking venture for years.

9       272.   MindGeek's repeated decisions to not only ignore, but participate and

10  profit from, GirlsDoPorn's unlawful sex trafficking and treatment of victims easily

11  establishes both the criminal "reckless disregard" standard and the lesser negligence

12  standard for civil liability damages and attorneys' fees under 18 U.S.C. § 1595.

13      273.   MindGeek's actions, however, were willful, malicious, oppressive, and

14  taken in reckless disregard of Plaintiff's rights. MindGeek knew the illegal and

15  unconsented publication of sex videos of Plaintiff and other young women would

16  destroy their lives.  Once published, GirlsDoPorn victims were ostracized by family

17  and friends and relentlessly harassed by strangers.  Victims suffered extreme distress,

18  and some became suicidal.  Plaintiff's anguish resulted in deep struggles with despair

19  and worthlessness. She also lost employment, career opportunities, and special

20  relationships.

21      274.   MindGeek also knew about the significant harassment and trauma that

22  Plaintiff and other victims suffered by the continued publication of their names and

23  pornographic content. MindGeek did not care and chose profits over the lives and

24  well-being of young people.

25      275.   As a result of MindGeek's unlawful conduct and vast legal problems,

26  MindGeek transferred its stock to a newly formed entity in 2023, Ethical Capital

27  Partners, to avoid or minimize its legal liability.

28      276.   On information and belief, Ethical Capital Partners recently changed

COMPLAINT FOR DAMAGES

1  MindGeek's name to Aylo in August 2023.

2  277.   This case seeks justice for a survivor of immeasurable pain and suffering

3  caused by MindGeek, the entity that despite knowledge of GirlsDoPorn's criminal

4  enterprise, chose time and again to prioritize profits over people.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**BENEFITTING FROM PARTICIPATION IN A SEX TRAFFICKING VENTURE IN VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT, 18 U.S.C. §§ 1591(a)(2), 1595**

9  278.   Plaintiff incorporates by reference and realleges each and every

10  allegation set forth in the foregoing paragraphs 1-277 as if fully alleged herein.

11  279.   Plaintiff was and is a victim of sex trafficking within the meaning of 22

12  U.S.C. § 7102(11) and in violation of 18 U.S.C. §§ 1591 and 1595.

13  280.   GirlsDoPorn operated a sex trafficking venture within the meaning of 18

14  U.S.C. §§ 1591 and 1595.

15  281.   GirlsDoPorn used fraud, coercion, intimidation, and threats of force to

16  cause Plaintiff to perform commercial sex acts, which GirlsDoPorn filmed and

17  distributed to MindGeek's tube sites and paysites through MindGeek's Content

18  Partner and Viewshare Programs.

19  282.   MindGeek knew, should have known, or acted in reckless disregard of

20  the fact that GirlsDoPorn operated a sex trafficking venture that wholly relied on the

21  use of force, threats of force, coercion, and/or fraud to film Plaintiff and other regular

22  high school and college-aged women engaging in commercial sex acts.

23  283.   MindGeek ignored complaints by Plaintiff and other GirlsDoPorn

24  victims, as well as the prior civil lawsuits and criminal proceedings, to prioritize its

25  own financial benefit and value from the illegally obtained videos of the sex

26  trafficking venture.

27  284.   MindGeek took many concrete steps to aid and participate in the

28  GirlsDoPorn sex trafficking venture, generally, and the sex trafficking of Plaintiff by,

*inter alia*:

(a) Providing GirlsDoPorn access to MindGeek's world-wide distribution channels so that both MindGeek and GirlsDoPorn could profit through the dissemination of videos depicting Plaintiff's sexual assault/rape;

(b) Partnering with GirlsDoPorn through its Content Partner Program and Viewshare Program;

(c) Providing GirlsDoPorn with MindGeek's global exposure, and the financial lifeline to sustain its criminal venture;

(d) Uploading, or permitting the uploading of, Plaintiff's sex trafficking videos to the GirlsDoPorn and GirlsDoToys channels on MindGeek's sites;

(e) Uploading Plaintiff's sex trafficking videos to the vast collection of MindGeek's pornography websites including, among other sites, PornHub.com, YouPorn.com, RedTube.com, XTube.com, and/or Tube8.com;

(f) Providing MindGeek employee representatives to assist GirlsDoPorn in maximizing exposure, views, subscriptions, and revenue from videos featuring Plaintiff and other GirlsDoPorn victims;

(g) Assisting GirlsDoPorn in monetizing the sex trafficking videos by acting as an affiliate for GirlsDoPorn.com, GirlsDoToys.com, and other paysites;

(h) Actively marketing and/or suggesting GirlsDoPorn videos and content to users of MindGeek's tube sites and/or paysites;

(i) Hyperlinking, marketing, advertising, promoting, selling, and/or exploiting videos featuring victims of GirlsDoPorn's sex trafficking venture, including Plaintiff;

(j) Creating, developing, and designing trailers, advertisements, titles, tags, descriptions, images, and/or other content for GirlsDoPorn videos and channels, including Plaintiff's videos and content;

(k) Providing search engine optimization services to GirlsDoPorn and its customers suggesting Plaintiff's videos to users;

(l) Conducting and/or facilitating financial transactions and distributing funds

to GirlsDoPorn for the illegal videos and content;

(m) Sharing revenue and profits with GirlsDoPorn;

(n) Permitting users to download GirlsDoPorn sex trafficking videos which could then be uploaded to any other website or otherwise exploited;

(o) Refusing to remove GirlsDoPorn's sex trafficking videos when Plaintiff and numerous other victims complained to MindGeek;

(p) Willfully ignoring the complaints of Plaintiff and numerous other victims that the sex trafficking videos were uploaded and used without their authorization and consent;

(q) Re-posting and/or republishing GirlsDoPorn's sex trafficking videos after previous removal;

(r) Continuing to use Plaintiff's videos, name, images, and/or identity through 2023, without authorization or consent, for its own financial gain and profit; and

(s) Failing to report the GirlsDoPorn sex trafficking venture to law enforcement.

285.   Through MindGeek's world-wide distribution channels, MindGeek provided GirlsDoPorn the network and financial lifeline for its unlawful business. GirlsDoPorn could not have achieved the distribution, sales, and profit it had—and that MindGeek benefitted from—without MindGeek's crucial support and participation. The concrete steps described above constituted taking part in the sex trafficking venture and were necessary for GirlsDoPorn's success. The concrete steps described above constituted active engagement by MindGeek in the GirlsDoPorn sex trafficking venture.

286.   MindGeek knowingly and intentionally benefitted, financially and by receiving things of value, from participating in, facilitating, supporting, and assisting the illegal coercive GirlsDoPorn sex trafficking venture that was in and affecting interstate and foreign commerce, together and with others, in violation of 18 U.S.C. § 1591 (a)(2).

287.   On information and belief, MindGeek knowingly benefited, financially or by receiving value, among others, by:

(a) Earning millions of dollars in affiliate fees through the Content Partner Program with GirlsDoPorn by exploiting Plaintiff's videos, name, images, and/or identity and sending user traffic from MindGeek's tube sites to GirlsDoPorn's paysites;

(b) Through the use of Plaintiff's videos, and those of other GirlsDoPorn victims, benefitting from increased traffic to its tube sites which resulted in increased advertisement revenue and increased sales of MindGeek's own products and content;

(c) Earning millions of dollars by selling "Premium" subscriptions through the Viewshare Program and using videos featuring Plaintiff and other GirlsDoPorn victims;

(d) Hosting the videos of Plaintiff and other GirlsDoPorn victims in the general library of its freesites, which resulted in increased traffic to MindGeek's tube sites and generated subscriptions and affiliate revenue from third-party paysites and MindGeek's own paysites;

(e) Continuing the unauthorized use and exploitation of Plaintiff's videos, name, images, likeness, and/or identity, even after the Department of Justice seized and shut down GirlsDoPorn, up to and through 2023, for its own financial gain.

288.   MindGeek had a statutory obligation not to knowingly benefit from participation in the GirlsDoPorn sex trafficking venture that it knew, or should have known, engaged in violations of the TVPRA under 18 U.S.C. § 1591(a).

289.   Nevertheless, MindGeek assisted, supported, and facilitated the GirlsDoPorn sex trafficking venture for its own financial gain.

290.   As a proximate result of MindGeek's knowing benefit and participation in the GirlsDoPorn sex trafficking venture, Plaintiff has suffered serious harm and damages. Further, MindGeek has received ill-gotten gains from the unlawful sex trafficking and exploitation of Plaintiff's videos, name, images, likeness, and/or

identity for its own business purposes and profit.

291.   MindGeek's employees, officers, directors, and/or managing agents had actual or constructive knowledge of the GirlsDoPorn sex trafficking venture or recklessly disregarded such.  MindGeek's actions were intentional, willful, malicious, fraudulent, oppressive, outrageous, despicable, and taken in reckless disregard of Plaintiff's rights.  Plaintiff is entitled to punitive damages to punish MindGeek for its actions and to deter others from acting similarly in the future.

292.   By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(2) and 1595, MindGeek is liable to Plaintiff for punitive damages.

293.   By virtue of these violations of 18 U.S.C. §§ 1591(a)(2) and 1595, MindGeek is liable to Plaintiff for damages and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### ADVERTISING A SEX TRAFFICKING VICTIM IN VIOLATION OF THE TRAFFICKING VICTIMS REAUTHORIZATION PROTECTION ACT, 18 U.S.C. §§ 1591(a)(1), 1595

294.   Plaintiff incorporates by reference and realleges each and every allegation set forth in the foregoing paragraphs 1-277 as if fully alleged herein.

295.   Plaintiff was and is a victim of sex trafficking within the meaning of 22 U.S.C. § 7102(11) and in violation of 18 U.S.C. §§ 1591 and 1595.

296.   MindGeek unlawfully advertised Plaintiff on its platforms in reckless disregard of the fact that GirlsDoPorn used force, threats of force, fraud, or coercion to make Plaintiff engage in the filmed commercial sex acts in violation of 18 U.S.C. §§ 1591(a)(1) and 1595.

297.   MindGeek further unlawfully provided, obtained, and maintained the sex trafficking videos of Plaintiff on its global platforms, distributing the videos to MindGeek's own tube sites  and paysites as well as through sites for MindGeek's subsidiaries, affiliates, Content Partner Program, and Viewshare Program.

298.   MindGeek knew, had constructive knowledge of, should have known, or acted in reckless disregard of the fact that GirlsDoPorn operated a sex trafficking

venture that wholly relied on the use of force, threats of force, coercion, and/or fraud to film Plaintiff and other regular high school and college-aged women engaging in commercial sex acts.

299. MindGeek ignored complaints by Plaintiff and other GirlsDoPorn victims, as well as the prior civil lawsuits and criminal, to prioritize its own financial benefit and value from advertising, providing, obtaining, and maintaining the illegally obtained videos of Plaintiff.

300. MindGeek knowingly and intentionally, through various means described herein, advertised, provided, obtained, and maintained Plaintiff's sex trafficking videos in and affecting interstate and foreign commerce, together and with others, in violation of 18 U.S.C. § 1591 (a)(1).

301. By taking the concrete steps outlined in paragraph 226 above, along with other allegations in this complaint, MindGeek knowingly partnered with GirlsDoPorn to advertise Plaintiff, and provide, obtain, and maintain Plaintiff's sex trafficking videos on its global platform.

302. MindGeek's affirmative conduct to advertise, provide, obtain, and maintain Plaintiff's videos was committed knowing, or in reckless disregard of the fact, that GirlsDoPorn was dependent on enticing and recruiting a constant stream of young women, who did not intend to pursue a career in adult entertainment, to shoot pornographic videos, and that GirlsDoPorn used a combination of force, threats of force, coercion, blackmail, intimidation, fraud, and/or disparity of power as the means to obtain the content they advertised on MindGeek's websites.

303. MindGeek had a statutory obligation not to knowingly advertise, provide, obtain, or maintain Plaintiff's sex trafficking videos on its websites when it knew, or should have known, or recklessly disregarded the fact, that GirlsDoPorn created the videos through force, threats of force, fraud, or coercion in violation of the TVPRA, 18 U.S.C. § 1591(a)(1).

304. Nevertheless, MindGeek continued to advertise, allow, and distribute

1  Plaintiff's videos for its own financial gain.

2       305.   As a proximate result of MindGeek's advertising and associated conduct,

3  Plaintiff has suffered serious harm and damages.  Further, MindGeek has received ill-

4  gotten gains from the unlawful advertisement and exploitation of Plaintiff's videos,

5  name, images, likeness, and/or identity for its own business purposes and profit.

6       306.   MindGeek's employees, officers, directors, and/or managing agents had

7  actual or constructive knowledge of GirlsDoPorn's unlawful conduct or recklessly

8  disregarded such.

9       307.   MindGeek's conduct in perpetrating TVPRA violations evinced a high

10  degree of moral turpitude, fraud, and dishonesty.   Its deliberate actions were

11  malicious, fraudulent, oppressive, outrageous, and taken in reckless disregard of

12  Plaintiff's rights.  Plaintiff is entitled to punitive damages to punish MindGeek for its

13  actions and to deter others from acting similarly in the future.

14       308.   By virtue of these knowing and intentional violations of 18 U.S.C. §§

15  1591(a)(1) and 1595, MindGeek is liable to Plaintiff for damages and reasonable

16  attorneys' fees.

17       309.   By virtue of these knowing and intentional violations of 18 U.S.C. §§

18  1591(a)(1) and 1595, MindGeek is liable to Plaintiff for punitive damages.

19  

**THIRD CAUSE OF ACTION**

20  **CONSPIRACY TO COMMIT VIOLATIONS OF THE TRAFFICKING**
**VICTIMS PROTECTION REAUTHORIZATION ACT, 18 U.S.C. §§ 1594(c),**

21  **1591, 1595**

22       310.   Plaintiff incorporates by reference and realleges each and every

23  allegation set forth in the foregoing paragraphs 1-277 as if fully alleged herein.

24       311.   MindGeek intentionally conspired with others, including Pratt and his

25  other co-conspirators, by agreement and understanding, to violate 18 U.S.C. §§

26  1591(a)(1) and (a)(2), and to further GirlsDoPorn's sex trafficking venture to coerce

27  commercial sex acts from Plaintiff and other victims, all in violation of 18 U.S.C. §

28  1594(c).  On information and belief, MindGeek's employees, agents, officers, and/or

directors conspired with Pratt to further the GirlsDoPorn sex trafficking venture.

312.   MindGeek's conspiracy to violate 18 U.S.C. §§ 1591(a)(1) and (a)(2) was forbidden by 18 U.S.C. § 1594(c) and MindGeek thereby violated the Trafficking Victims Protection Reauthorization Act.

313.   MindGeek's conspiracy directly, proximately, and foreseeably harmed Plaintiff by directly leading to her forcibly engaging in commercial sex acts and in other ways, including by continuously advertising videos of her trafficking. MindGeek's conspiracy exploited Plaintiff and victimized her.

314.   MindGeek conspired with Pratt and his co-conspirators to facilitate Pratt's GirlsDoPorn sex trafficking venture for the purpose of profiting therefrom. MindGeek had knowledge of Pratt's sex trafficking venture and acted with the specific intent to further the venture, including by advertising Plaintiff.  Pratt could not and did not act alone.  Rather, MindGeek's employees, agents, officers, and/or directors approved and accepted Pratt's GirlsDoPorn sex trafficking venture into its Content Partner Program and Viewshare Program and directly conspired with Pratt to further the profits reaped by both GirlsDoPorn and MindGeek.

315.   MindGeek and Pratt had a meeting of the minds as to the essential nature of the plan to promote GirlsDoPorn and obtain exposure, views, subscriptions, and revenue for both MindGeek's and GirlsDoPorn's businesses.

316.   MindGeek's conspiracy with Pratt was part of its participation in the GirlsDoPorn sex trafficking venture.  Without MindGeek agreeing to promote and facilitate the venture—by providing its global platform, world-wide distribution channels, and financial lifeline—Pratt would not have been able to sustain GirlsDoPorn and continue to entice and recruit victims for years.

317.   MindGeek's overt acts in furtherance of the conspiracy, understanding, and agreement in violation of 18 U.S.C. § 1591(a) are, among others, described in paragraphs 226 above.

318.   Among the many overt acts intentionally committed by MindGeek in

furtherance of the sex trafficking venture was creating and maintaining a business partnership and financial relationship between MindGeek and Pratt/GirlsDoPorn within this District and designed to facilitate and continue the sex trafficking of Plaintiff and other victims.

319.   On information and belief, the financial accounts and transactions between MindGeek and GirlsDoPorn were in and affecting interstate and foreign commerce, including within this District.

320.   MindGeek's actions in furtherance of the conspiracy were intertwined with Pratt's GirlsDoPorn sex trafficking venture, as the global exposure, world-wide distribution, subscription sales, and funding for the sex trafficking venture were essential for Pratt to commit coercive commercial sex acts.

321.   It was part of the conspiracy that MindGeek would financially benefit from providing the global exposure, world-wide distribution, subscription sales, and funding for the GirlsDoPorn sex trafficking venture.  MindGeek financially benefitted from its participation in and facilitation of the venture.

322.   MindGeek knew, should have known, and/or acted in reckless disregard of the fact that the conspiracy would directly and proximately lead to unlawful commercial sex acts of Plaintiff by Pratt and his GirlsDoPorn co-conspirators.

323.   Plaintiff's videos had hundreds of millions of views, and on information and belief, generated millions of dollars for MindGeek and GirlsDoPorn.  Pratt and his co-conspirators, including MindGeek, knew Plaintiff's name and exploited her name, videos, images, and/or identity without authorization and consent.

324.   Further, due to the commercial and financial success of Plaintiff's videos, Pratt and his co-conspirators, including MindGeek, continued to engage Plaintiff in commercial sex acts through means of force, threats of force, coercion, intimidation, fraud, and/or a combination of such means.

325.   MindGeek benefitted financially from and received value from conspiring to participate in Pratt's GirlsDoPorn sex trafficking venture.

326.   MindGeek's conspiracy has caused Plaintiff serious harm and damages. That harm was directly and proximately caused by the conspiracy and the harm resulting from the conspiracy was foreseeable.

327.   MindGeek's conduct in conspiring to violate the TVPRA was intentional and outrageous because it was deliberate in furtherance of a widespread, illegal, and dangerous sex trafficking venture.  It also evinced a high degree of moral turpitude, fraud, and dishonesty.

328.   By virtue of these violations of 18 U.S.C. § 1594(c), MindGeek is liable to Plaintiff for damages and reasonable attorneys' fees under 18 U.S.C. § 1595.

329.   By virtue of its intentional and outrageous conspiracy to violate of 18 U.S.C. §§ 1591 and 1594, MindGeek is liable to Plaintiff for punitive damages.

**FOURTH CAUSE OF ACTION**

**ATTEMPT TO COMMIT VIOLATIONS OF THE TRAFFICKING VICTIMS REAUTHORIZATION PROTECTION ACT, 18 U.S.C. §§ 1594(a), 1591, 1595**

330.   Plaintiff incorporates by reference and realleges each and every allegation set forth in the foregoing paragraphs 1-277 as if fully alleged herein.

331.   MindGeek knowingly attempted to violate 18 U.S.C. §§ 1591(a)(1) and (a)(2), and to further Pratt's GirlsDoPorn sex trafficking venture to coerce commercial sex acts from Plaintiff and other victims in violation of 18 U.S.C. § 1594(a).

332.   MindGeek's employees, agents, officers, and/or directors deliberately took substantial steps described, among others, in paragraphs 226 above to attempt to violate 18 U.S.C. §§ 1591(a)(1) and (a)(2) within this District.

333.   Among the many substantial steps taken by MindGeek to deliberately attempt to violate 18 U.S.C. §§ 1591(a)(1) and (a)(2) was creating and maintaining a business partnership and financial relationship between MindGeek and Pratt/GirlsDoPorn within this District and designed to facilitate and continue sex trafficking Plaintiff and other victims.

334.   On information and belief, the financial accounts and transactions

between MindGeek and GirlsDoPorn were in and affecting interstate and foreign commerce, including within this District.

335.   In attempting to further sex trafficking Plaintiff and other GirlsDoPorn victims, MindGeek provided GirlsDoPorn with support, assistance, global exposure, and world-wide distribution of its videos, images, and content to maximize views, subscription sales, and revenue for the financial benefit of both MindGeek and GirlsDoPorn.

336.   It was part of the attempt to violate 18 U.S.C. § 1591(a)(1) that MindGeek would advertise, provide, obtain, and maintain sex trafficking videos of Plaintiff and other GirlsDoPorn victims.   MindGeek profited from these unlawful advertisements.

337.   It was part of the attempt to violate 18 U.S.C. § 1591(a)(2) that MindGeek would financially benefit from participating in, facilitating, and supporting Pratt's GirlsDoPorn sex trafficking venture.   MindGeek financially benefitted from its participation in, facilitation, and support of the venture.

338.   MindGeek knew, should have known, and/or acted in reckless disregard of the fact that the attempt to violate 18 U.S.C. §§ 1591(a)(1) and (a)(2) would directly and proximately lead to unlawful commercial sex acts of Plaintiff by Pratt and his GirlsDoPorn co-conspirators.

339.   Plaintiff's videos had hundreds of millions of views, and on information and belief, generated millions of dollars for MindGeek and GirlsDoPorn.   Pratt and his co-conspirators, including MindGeek, knew Plaintiff's name and exploited her name, videos, images, and/or identity, without authorization and consent, in an attempt to violate 18 U.S.C. §§ 1591(a)(1) and (a)(2).

340.   Further, due to the commercial and financial success of Plaintiff's videos, Pratt and his co-conspirators, including MindGeek, continued to engage Plaintiff in commercial sex acts through means of force, threats of force, coercion, intimidation, fraud, and/or a combination of such means in an attempt to violate 18

COMPLAINT FOR DAMAGES

1  U.S.C. § 1591(a).

2      341.   MindGeek's attempt to violate 18 U.S.C. §§ 1591(a)(1) and (a)(2) was a

3  deliberate attempt to further a widespread, illegal, and dangerous sex trafficking

4  venture directed specifically at Plaintiff and other victims of GirlsDoPorn.  It also

5  evinced a high degree of moral turpitude, fraud, and dishonesty.

6      342.   MindGeek's conduct has caused Plaintiff serious harm and damages.

7  That harm was directly and proximately caused by the conspiracy and the harm

8  resulting from the conspiracy was foreseeable.

9      343.   By virtue of these violations of 18 U.S.C. § 1594(a), MindGeek is liable

10 to Plaintiff for damages and reasonable attorneys' fees under 18 U.S.C. § 1595.

11     344.   By virtue of its intentional and outrageous attempt to violate 18 U.S.C.

12 §§ 1591 and 1594, MindGeek is liable to Plaintiff for punitive damages.

13              **FIFTH CAUSE OF ACTION**

14 **AIDING, ABETTING, AND INDUCING SEX TRAFFICKING IN
   VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION**

15 **REAUTHORIZATION ACT, 18 U.S.C. §§ 2, 1591(a)(1) & (2), 1595**

16     345.   Plaintiff incorporates by reference and realleges each and every

17 allegation set forth in the foregoing paragraphs 1-277 as if fully alleged herein.

18     346.   Acting through its employees, officers, directors, and/or managing

19 agents, MindGeek aided, abetted, and induced Pratt's  sex trafficking of Plaintiff and

20 other GirlsDoPorn victims that was in and affecting interstate and foreign commerce,

21 together and with others, in violation of 18 U.S.C. §§ 2, 1591(a)(1) and (a)(2).

22     347.   Under 18 U.S.C. § 2, MindGeek is punishable as a principal for

23 committing and perpetrating crimes in violation of 18 U.S.C. §§ 1591(a)(1) and (a)(2)

24 by aiding, abetting, inducing, and procuring Plaintiff's sex trafficking and the

25 GirlsDoPorn sex trafficking venture.

26     348.   As a consequence, Plaintiff is a victim of MindGeek's criminally

27 aiding, abetting, and inducing Pratt's and his conspirators' violations of 18 U.S.C. §§

28 1591(a)(1) and (a)(2). These actions were in and affecting interstate and foreign

commerce.

349.   The crimes that MindGeek aided and abetted, include but are not limited to: (1) Pratt's and his conspirators' perpetrating of sex trafficking in violation of 18 U.S.C. § 1591(a)(1), and (2) Pratt's and his conspirators' knowingly benefitting from forceful, fraudulent, and coercive sex trafficking in violation of 18 U.S.C. § 1591(a)(2).   These crimes were in and affecting interstate and foreign commerce.

350.   Pratt and his conspirators, including MindGeek, knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited Plaintiff and other GirlsDoPorn victims.

351.   Pratt and his conspirators also knowingly benefitted financially and received things of value from their participation in the GirlsDoPorn's sex trafficking venture, including payments and other compensation.

352.   The GirlsDoPorn sex trafficking venture used force, threats of force, fraud, and coercion to film Plaintiff and other victims engaging in commercial sex acts.

353.   Among other things, MindGeek aided, abetted, and induced the sex trafficking of Plaintiff and the GirlsDoPorn sex trafficking venture by promoting and providing a turn-key approach for world-wide exposure and sales to help GirlsDoPorn become massively profitable.

354.   Without MindGeek's participation, support, and promotion of GirlsDoPorn's unlawful content and paysites, GirlsDoPorn would not have had the global marketing and distribution for its content and would have made significantly less money on their venture.

355.   MindGeek aided, abetted, and induced the sex trafficking of Plaintiff and Pratt's GirlsDoPorn sex trafficking venture with actual or constructive knowledge, or in reckless disregard of the fact, that Pratt and his conspirators would use means of force, threats of force, fraud, coercion, extortion, and a combination of such means to cause Plaintiff to engage in commercial sex acts.

356.   By offering clear financial enticements for Pratt and his conspirators to participate with them, MindGeek had a financial incentive to ignore numerous complaints that the content from Plaintiff and other young people not involved in the pornography industry was obtained through means of force, threats of force, fraud, coercion, extortion, and a combination of such means to cause them to engage in commercial sex acts.  MindGeek knew, and should have known, that Pratt and his conspirators engaged in acts in violation of 18 U.S.C. §§ 1591(a)(1) and (a)(2).

357.   By aiding, abetting, and inducing Pratt's and his conspirators' GirlsDoPorn sex trafficking venture and the sex trafficking of Plaintiff, MindGeek knowingly benefitted, both financially and by receiving things of value, from participating in such venture.

358.   MindGeek's knowing and intentional conduct of aiding, abetting, and inducing Pratt's and his conspirators' violations has caused Plaintiff serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

359.   This case does not involve mere fraud.  Instead, MindGeek's criminal conduct in aiding, abetting, and inducing Pratt's and his conspirators' violations was outrageous and intentional and in deliberate furtherance of a widespread unlawful business and sex trafficking venture. MindGeek's criminal conduct also evinced a high degree of moral turpitude and was directed specifically at Plaintiff.

360.   By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(1) and (a)(2), and 1595, MindGeek is liable to Plaintiff for damages and reasonable attorneys' fees.

361.   By virtue of its intentional and outrageous attempt to violate 18 U.S.C. §§ 1591 and 1594, MindGeek is liable to Plaintiff for punitive damages.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125 (a)**
**FALSE ADVERTISING AND FALSE ENDORSEMENT**

362.    Plaintiff incorporates by reference and realleges each and every allegation set forth in the foregoing paragraphs 1-277 as if fully alleged herein.

363.    Section 43(a) of The Lanham Act, 15 U.S.C. § 1125(a), applies to MindGeek.

364.    Section 43(a) of The Lanham Act, 15 U.S.C. § 1125(a), protects Plaintiff from MindGeek's conduct described herein.

365.    MindGeek uses the Internet to advertise, promote, market, and maximize traffic to their sites and business, affecting interstate and foreign commerce, for the purpose of obtaining paying customers and generating profits.

366.    Defendants used, promoted, and exploited Plaintiff's name, videos, images, likeness, and/or identity as described herein without authority in order to, *inter alia*, increase and maximize views, subscriptions, and revenue on or to their sites and businesses, create the false perception that Plaintiff was affiliated with their businesses, endorsed the business activities MindGeek and GirlsDoPorn, and/or consented to or authorized the usage of her videos, images, likeness, and/or identity in order to advertise, promote, and market the business activities of MindGeek and GirlsDoPorn.

367.    Plaintiff never intended or wanted to pursue a career in pornography and never consented to the use of her videos, name, images, likeness, and/or identity on any GirlsDoPorn or MindGeek site.

368.    The Honorable Keven A. Enright found that the coercive GirlsDoPorn contracts are invalid and unenforceable due to GirlsDoPorn's fraudulent scheme.[48]

369.    The Honorable Janis L. Sammartino likewise ordered that the coercive

---

[48] *See* Ex. 2, at 3.

GirlsDoPorn contracts are void and unenforceable, and additionally, ordered that all transfers, licenses, or leases to any third parties are void, that Plaintiff and other victims hold superior right, title, and interest in their images, likeness, and videos, and Plaintiff and other victims shall have and recover all property GirlsDoPorn took from them, including images, likeness, videos, and copyrights.[49]

370.   Plaintiff is listed as a victim in Attachment A of Judge Sammartino's Order.[50]

371.   At all times relevant to this Complaint, MindGeek had actual and exclusive control over the contents contained within and/or displayed on its sites and on the GirlsDoPorn paysite channels on its sites.

372.   MindGeek had actual or constructive knowledge of the wrongfulness of its conduct and acted with intent to deprive Plaintiff of her rights and interest. MindGeek further acted with actual or constructive knowledge of the high probability that their actions would cause harm and damage to Plaintiff.

373.   MindGeek's use, alteration, and/or exploitation of Plaintiff's name, videos, images, likeness, and/or identity to advertise, promote, and market MindGeek's businesses and activities as described in this Complaint was false, misleading, and a misrepresentation of fact.

374.   MindGeek's unauthorized use of Plaintiff's name, videos, images, likeness, and/or identity as described herein constitutes false advertising and false endorsement by falsely suggesting or implying, *inter alia*, that Plaintiff was affiliated with, associated with, or connected to MindGeek, endorsed MindGeek's business or activities, or consented to or authorized MindGeek's usage of her name, videos, images, likeness, and/or identity in order to maximize views, subscriptions, and revenue for sites operated and controlled by MindGeek and GirlsDoPorn.

---

[49] *See* Ex. 8a, at 5.

[50] *See* Ex. 8b.

375.   Upon information and belief, MindGeek's false and deceptive use of Plaintiff's name, videos, images, likeness, and/or identity as described herein deceived and/or caused actual customer confusion as to:

(a)   Whether Plaintiff was affiliated or associated with MindGeek and GirlsDoPorn;

(b)   Whether Plaintiff endorsed, sponsored, or approved of MindGeek's business and activities;

(c)   Whether Plaintiff consented to or authorized MindGeek usage of her name, videos, images, likeness, and/or identity in order to advertise and promote their business and maximize views, subscriptions, and revenue.

376.   Upon information and belief, such unauthorized use of Plaintiff's name, videos, images, likeness, and/or identity as described herein misled and deceived customers and enticed potential customers to visit MindGeek or GirlsDoPorn sites and pay for subscriptions on the paysites.

377.   MindGeek knew or should have known that their unauthorized use of Plaintiff's name, videos, images, likeness, and/or identity as described herein would cause consumer confusion.

378.   MindGeek's unauthorized use of Plaintiff's name, videos, images, likeness, and/or identity as described herein violates 15 U.S.C. § 1125(a), constitutes false advertising and false endorsement, and was wrongful.

379.   MindGeek's wrongful conduct as described herein was willful or consciously disregarded that fact that Plaintiff did not consent to MindGeek's use of her name, videos, images, likeness, and/or identity to advertise and promote its business and activities.  MindGeek violated Plaintiff's rights solely to benefit its business and increase profits.

380.   MindGeek has caused significant damage to Plaintiff as a direct, foreseeable and proximate result of their unauthorized use of Plaintiff's name, videos, images, likeness, and/or identity as described herein.

381.   As a further direct and proximate result of MindGeek's conduct as alleged herein, MindGeek has wrongly obtained and withheld profits attributed directly or indirectly to the unlawful use of Plaintiff's name, videos, images, likeness, and/or identity, entitling Plaintiff to disgorgement of those ill-gotten gains in an amount to be determined at trial.

382.   Exceptional relief is warranted pursuant to 15 U.S.C. §§ 1116 and 1117(a), entitling Plaintiff to treble damages and reasonable attorneys' fees.

### SEVENTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S TRAFFICKING VICTIMS PROTECTION ACT, CAL. CIV. CODE § 52.5, CAL. PEN. CODE § 236.1

383.   Plaintiff incorporates by reference and realleges each and every allegation set forth in the foregoing paragraphs 1-277 as if fully alleged herein.

384.   Plaintiff is a victim of sex trafficking within the meaning of California Penal Code § 236.1 and 22 U.S.C. § 7102(11).   She was induced to perform commercial sex acts through force, fraud, or coercion that were filmed by GirlsDoPorn, and advertised, distributed, and maintained by MindGeek.

385.   Under California Penal Code § 236.1(a), MindGeek's acts, omission, and commissions, taken separately and/or together violated Plaintiff's personal liberty with the intent to obtain forced labor or services, including but not limited to, the continued creation, advertising, distribution, and maintenance of Plaintiff's sex trafficking videos.

386.   Under California Penal Code § 236.1(b), MindGeek's acts, omission, and commissions, taken separately and/or together also violated Plaintiff's personal liberty with the intent to effect or maintain violations of Penal Code §§ 266, 311.2, 311.5, or 518.

387.   In violation of California Penal Code § 266, through MindGeek's and GirlsDoPorn's partnership, Plaintiff and her sex trafficking videos depicting illicit carnal connections with another person were procured by false pretenses, false

COMPLAINT FOR DAMAGES

1   representation, or other fraudulent means.

2       388.   In violation of California Penal Code §§ 311.2 and 311.5, MindGeek
3   knowingly and intentionally distributed, sold, possessed, produced, solicited, and
4   advertised Plaintiff's sex trafficking videos in California, and these videos constitute
5   obscene matter within the meaning of Penal Code § 311(a).

6       389.   In violation of California Penal Code § 518, MindGeek and GirlsDoPorn
7   wrongfully used force or fear to extort Plaintiff into filming sex trafficking videos.

8       390.   MindGeek intended to deprive Plaintiff of her personal liberty by
9   refusing to remove, take down, or otherwise de-publish Plaintiff's sex trafficking
10  videos on its websites.

11      391.   As a proximate result of MindGeek's violations of California's
12  Trafficking Victim's Prevention Act, Penal Code § 236.1, Plaintiff has suffered
13  serious harm and damages.  Further, MindGeek has received ill-gotten gains from the
14  unlawful advertisement and exploitation of Plaintiff's videos, name, images, likeness,
15  and/or identity for its own business purposes and profit.

16      392.   MindGeek's actions were intentional, willful, malicious, fraudulent,
17  oppressive, outrageous, despicable, and taken in reckless disregard of Plaintiff's
18  rights.  Plaintiff is entitled to punitive damages to punish MindGeek for its actions
19  and to deter others from acting similarly in the future.

20      393.   MindGeek was unjustly enriched for violating the California Trafficking
21  Victims Protection Act. It would be inequitable for MindGeek to retain the financial
22  benefit of its exploitation of Plaintiff for its own business purposes and profit.

23      394.   By virtue of these knowing and intentional violations of California Penal
24  Code § 236.1, MindGeek is statutorily liable to Plaintiff for damages and reasonable
25  attorneys' fees pursuant to California Civil Code § 52.5(a).

26      395.   By virtue of these knowing and intentional violations of California Penal
27  Code § 236.1, MindGeek is statutorily liable to Plaintiff for punitive damages
28  pursuant to California Civil Code § 52.5(a).

1

**EIGHTH CAUSE OF ACTION**

2

**VIOLATION OF CAL. CIV. CODE § 1708.85, DISTRIBUTION OF PRIVATE SEXUALLY EXPLICIT MATERIALS**

3

4

396.   Plaintiff incorporates by reference and realleges each and every allegation set forth in the foregoing paragraphs 1-277 as if fully alleged herein.

5

6

397.   MindGeek intentionally, willfully, maliciously, and fraudulently distributed Plaintiff's sex trafficking videos on its vast global platforms.

7

8

398.   Plaintiff did not consent to MindGeek's distribution of her sex trafficking videos.

9

10

399.   The GirlsDoPorn sex trafficking videos of Plaintiff depicted Plaintiff's intimate body parts and Plaintiff engaging in sexual acts.

11

12

400.   MindGeek knew, or should have known, that Plaintiff had a reasonable expectation of privacy in her sex trafficking videos because Plaintiff and other GirlsDoPorn victims directly reported their unauthorized use to MindGeek.

13

14

15

401.   MindGeek ignored complaints by Plaintiff and other GirlsDoPorn victims, as well as the prior civil lawsuits and criminal proceedings against GirlsDoPorn, to prioritize its own financial benefit and value from advertising, providing, obtaining, and maintaining the illegally obtained videos of Plaintiff.

16

17

18

19

402.   As a proximate result of MindGeek's distribution of Plaintiff's private, sexually explicit materials in violation of California Civil Code § 1708.85, Plaintiff has suffered serious harm and damages, including but not limited to general and special damages within the meaning of Civil Code § 48a for loss of reputation, shame, mortification, and hurt feelings.  Further, MindGeek has received ill-gotten gains from the unlawful distribution of private sexually explicit material of Plaintiff for its own business purposes and profit.

20

21

22

23

24

25

403.   MindGeek's conduct was willful and malicious in that they violated Plaintiff's rights solely to benefit their business and increase profits.

26

27

404.   MindGeek was unjustly enriched for distributing private, sexually

28

explicit materials of Plaintiff. It would be inequitable for MindGeek to retain the financial benefit of its exploitation of Plaintiff for its own business purposes and profit.

405. By virtue of MindGeek's knowing and intentional violations of California Civil Code § 1708.85 with a high degree of moral turpitude, MindGeek is liable to Plaintiff for punitive damages. By virtue of these knowing and intentional violations of California Civil Code § 1708.85, MindGeek is statutorily liable to Plaintiff for damages and reasonable attorneys' fees pursuant to California Civil Code §§ 1708.85(a) and (e).

## NINTH CAUSE OF ACTION

### VIOLATION OF CAL. CIV. CODE § 3344(a), COMMERCIAL MISAPPROPRIATION OF LIKENESS

406. Plaintiff incorporates by reference and realleges each and every allegation set forth in the foregoing paragraphs 1-277 as if fully alleged herein.

407. Under California law, Plaintiff holds the exclusive right to control the public dissemination of her name, voice, photograph, and likeness for commercial use.

408. In violation of Civil Code § 3344(a), MindGeek knowingly used Plaintiff's, name, voice, photograph, and likeness without her consent, and for its own commercial gain.

409. MindGeek knowingly used pictures and videos of Plaintiff's face and body on its website platforms for advertising and its own business and financial advantage.  These pictures and videos readily identify and distinguish Plaintiff.

410. MindGeek knowingly used Plaintiff's name, voice, photograph, and likeness to hyperlink, market, advertise, promote, sell, and/or exploit videos featuring GirlsDoPorn victims, including Plaintiff.

411. MindGeek also used Plaintiff's name, voice, photograph, and likeness to create, develop, and design trailers, advertisements, titles, tags, descriptions, images,

and/or other content for GirlsDoPorn videos and channels, including Plaintiff's videos and content.

412.   Plaintiff never consented to the use or distribution of her name, voice, photograph, and likeness on the internet or MindGeek's global platforms.

413.   MindGeek's wrongful conduct was willful or consciously disregarded that fact that Plaintiff did not consent to MindGeek's use of her name, voice, photograph, and likeness to advertise and promote its business and/or for any purpose or advantage.

414.   MindGeek received direct reports from Plaintiff and numerous other GirlsDoPorn victims of its unauthorized use of their names, voices, photographs, and likenesses on its global platforms.

415.   MindGeek ignored complaints by Plaintiff and other GirlsDoPorn victims, as well as the prior civil lawsuits and criminal proceedings against GirlsDoPorn, to prioritize its own financial benefit and value from advertising, providing, obtaining, and maintaining the illegally obtained videos of Plaintiff.

416.   Plaintiff's videos had hundreds of millions of views, and on information and belief, generated millions of dollars for MindGeek.

417.   Due to this commercial and financial success, MindGeek continued its unauthorized use of Plaintiff's name, voice, photograph, and likeness, long after it knew of the GirlsDoPorn criminal enterprise and Plaintiff's lack of consent.

418.   MindGeek's use of Plaintiff's name, voice, photograph, and likeness was thus directly connected to MindGeek's commercial purposes.

419.   MindGeek's knowing misappropriation of Plaintiff's name, voice, photograph, and likeness constitutes a violation of California Civil Code § 3344(a) and has caused significant harm and damages to Plaintiff, including, but not limited to, mental suffering, anguish, humiliation, shame, embarrassment, mortification, and other emotional distress, as a direct, foreseeable, and proximate result of its unauthorized conduct.

420.   MindGeek's commercial misappropriation has caused, and will continue to cause, irreparable harm to Plaintiff, her reputation, and brand by attributing to Plaintiff a desired career in the adult entertainment industry of which she never wanted and did not consent.

421.   As a further direct and proximate result of MindGeek's conduct, MindGeek has earned and withheld profits attributed directly or indirectly to the unlawful use of Plaintiff's name, voice, photograph, and likeness, entitling Plaintiff to disgorgement of those ill-gotten gains in an amount to be determined at trial.

422.   MindGeek's conduct was willful and malicious in that they violated Plaintiff's rights solely to benefit their business and increase profits.

423.   MindGeek was unjustly enriched for commercially misappropriating Plaintiff's name, voice, photograph, and likeness. It would be inequitable for MindGeek to retain the financial benefit of its misappropriation of Plaintiff for its own business purposes and profit.

424.   By virtue of MindGeek's commercial misappropriation of Plaintiff's name, voice, photograph, and likeness, MindGeek is liable to Plaintiff for statutory and other damages in an amount to be determined at trial.

425.   By virtue of MindGeek's commercial misappropriation with a high degree of moral turpitude, MindGeek is liable to Plaintiff for punitive damages.

426.   As a further direct and proximate result of MindGeek's conduct as alleged herein, MindGeek has earned and withheld profits attributed directly or indirectly to the unlawful use of Plaintiff's name, videos, images, photographs, likeness, and/or identity, entitling Plaintiff to disgorgement of those ill-gotten gains in an amount to be determined at trial.

/ / /

/ / /

/ / /

/ / /

1

2

**TENTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S RIGHT OF PUBLICITY:**
**MISAPPROPRIATION OF LIKENESS**

3

4

427.   Plaintiff incorporates by reference and realleges each and every allegation set forth in the foregoing paragraphs 1-277 as if fully alleged herein.

5

6

428.   Under California law, Plaintiff holds the exclusive right to control the public dissemination of her name, likeness, and identity for commercial use.

7

8

429.   MindGeek unlawfully obtained, used, and promoted the name, likeness, and identity of Plaintiff without her consent, for its own commercial gain.

9

10

11

430.   MindGeek unlawfully used pictures and videos of Plaintiff's face and body on its website platforms for advertising and its own business and financial advantage.  These pictures and videos readily identified and distinguished Plaintiff.

12

13

431.   Plaintiff never consented to the use or distribution of her name, likeness, and/or identity on the internet or MindGeek's global platforms.

14

15

432.   Plaintiff's videos had hundreds of millions of views, and on information and belief, generated millions of dollars for MindGeek.

16

17

18

19

433.   Due to this commercial and financial success, MindGeek continued its unauthorized use of Plaintiff's name, likeness, and/or identity, long after it knew of the GirlsDoPorn criminal enterprise and Plaintiff's lack of consent.

20

21

22

23

24

434.   MindGeek's misappropriation of Plaintiff's name, likeness, and/or identity constitutes a violation of her right of publicity and has caused significant harm and damages to Plaintiff, including, but not limited to, mental suffering, anguish, humiliation, shame, embarrassment, mortification, and other emotional distress as a direct, foreseeable, and proximate result of its unauthorized conduct.

25

26

27

435.   MindGeek's violation of Plaintiff's right of publicity has caused, and will continue to cause, irreparable harm to Plaintiff, her reputation, and brand by attributing to Plaintiff a desired career in the adult entertainment industry of which she never wanted and did not consent.

28

COMPLAINT FOR DAMAGES

436.  As a further direct and proximate result of MindGeek's conduct, MindGeek has earned and withheld profits attributed directly or indirectly to the unlawful use of Plaintiff's name, likeness, and identity, entitling Plaintiff to disgorgement of those ill-gotten gains in an amount to be determined at trial.

437.  MindGeek's conduct was willful and malicious in that they violated Plaintiff's rights solely to benefit their business and increase profits.

438.  MindGeek was unjustly enriched for misappropriating Plaintiff's name, likeness, and identity. It would be inequitable for MindGeek to retain the financial benefit of its misappropriation of Plaintiff for its own business purposes and profit.

439.  By virtue of MindGeek's misappropriation with a high degree of moral turpitude, MindGeek is liable to Plaintiff for punitive damages.

440.  By virtue of MindGeek's misappropriation of Plaintiff's name, likeness, and identity, MindGeek is liable to Plaintiff for damages in amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

## VIOLATION OF RIGHT TO PRIVACY, CAL. CONST., ART. 1, § 1

441.  Plaintiff incorporates by reference and realleges each and every allegation set forth in the foregoing paragraphs 1-277 as if fully alleged herein.

442.  In violation of California's constitutional right to privacy, Cal. Const., Art. 1, § 1, MindGeek obtained, used, and advertised sexually explicit pictures and videos of Plaintiff.

443.  The misappropriated images and videos depicted Plaintiff's face and body in a sexually explicit manner which readily identified and distinguished Plaintiff.

444.  The GirlsDoPorn perpetrators and conspirators deceived and lied to Plaintiff  that the sexually explicit images and videos would not be widely posted, distributed, and advertised across the internet.

445.  Yet MindGeek intentionally intruded into Plaintiff's reasonable

expectation of privacy by using these pictures and videos of Plaintiff for advertising and its own business and financial advantage, distributing the material across MindGeek's global platforms.

446.  Plaintiff's videos had hundreds of millions of views, and on information and belief, generated millions of dollars for MindGeek.

447.  Due to this commercial and financial success, MindGeek continued its unlawful invasion of Plaintiff's privacy despite Plaintiff's explicit request for the content to be removed.

448.  MindGeek's widespread advertising and distribution of such sexually explicit material across the internet and MindGeek's global platforms was a severe intrusion into Plaintiff's privacy and would be highly offensive to a reasonable person.

449.  MindGeek's knowing and wrongful conduct constitutes a violation of Plaintiff's right to privacy and has caused significant harm and damages to Plaintiff, including, but not limited to, mental suffering, anguish, humiliation, shame, embarrassment, mortification, and other emotional distress as a direct, foreseeable, and proximate result of its unconscionable conduct.

450.  MindGeek's violation of Plaintiff's right to privacy has caused, and will continue to cause, irreparable harm to Plaintiff, her reputation, and brand by attributing to Plaintiff a desired career in the adult entertainment industry of which she never wanted and did not consent.

451.  MindGeek's conduct was willful and malicious in that they violated Plaintiff's rights solely to benefit their business and increase profits.

452.  MindGeek was unjustly enriched for invading Plaintiff's privacy. It would be inequitable for MindGeek to retain the financial benefit of its invasion of Plaintiff for its own business purposes and profit.

453.  By virtue of MindGeek's intrusion into Plaintiff's privacy with a high degree of moral turpitude, MindGeek is liable to Plaintiff for punitive damages.

454.  By virtue of MindGeek's intrusion into Plaintiff's privacy, MindGeek is

1  liable to Plaintiff for damages in an amount to be determined at trial.

2  **TWELFTH CAUSE OF ACTION**

3  **FALSE LIGHT INVASION OF PRIVACY**

4  455. Plaintiff incorporates by reference and realleges each and every

5  allegation set forth in the foregoing paragraphs 1-277 as if fully alleged herein.

6  456. MindGeek's public use, distribution, and advertisement of Plaintiff's

7  name, likeness, and videos across its global platform created the false and misleading

8  impression that Plaintiff approved of, and participated in, MindGeek's business,

9  including the business of selling and advertising access to videos featuring Plaintiff.

10  457. MindGeek's public use, distribution, and advertisement of Plaintiff's

11  name, likeness, and videos across its global platform further created the false and

12  misleading impression that Plaintiff desired a career in the adult entertainment

13  industry.

14  458. These impressions are, and have always been, both misleading and false.

15  459. The misappropriated images and videos depicted Plaintiff's face and

16  body in a sexually explicit manner which readily identified and distinguished

17  Plaintiff.

18  460. MindGeek knew, should have known, or recklessly disregarded the fact

19  that using the misappropriated images and videos of Plaintiff was misleading.

20  461. Yet MindGeek intentionally intruded into Plaintiff's privacy by using

21  this content for advertising and its own business and financial advantage, distributing

22  the material across MindGeek's global platforms.

23  462. Plaintiff's videos had hundreds of millions of views, and on information

24  and belief, generated millions of dollars for MindGeek.

25  463. Due to this commercial and financial success, MindGeek continued its

26  unlawful invasion of Plaintiff's privacy despite Plaintiff's explicit request for the

27  content to be removed.

28  464. The false and misleading impression of Plaintiff created by MindGeek's

widespread advertising and distribution of such sexually explicit material across the internet and MindGeek's global platforms was a severe intrusion into Plaintiff's privacy and would be highly offensive to a reasonable person.

465.   MindGeek's knowing, willful, and wrongful conduct constitutes a false light invasion of Plaintiff's right to privacy and has caused significant harm and damages to Plaintiff, including, but not limited to, mental suffering, anguish, humiliation, shame, embarrassment, mortification, and other emotional distress as a direct, foreseeable, and proximate result of its unconscionable conduct.

466.   MindGeek further acted with reckless indifference as to how its use, distribution, and advertisement of Plaintiff's misappropriated image and video would create a false and misleading impression about Plaintiff.

467.   MindGeek's false light invasion of Plaintiff's right to privacy has caused, and will continue to cause, irreparable harm to Plaintiff, her reputation, and brand by attributing to Plaintiff a desired career in the adult entertainment industry of which she never wanted and did not consent.

468.   MindGeek's conduct was willful and malicious in that they violated Plaintiff's rights solely to benefit their business and increase profits.

469.   MindGeek was unjustly enriched for invading Plaintiff's privacy. It would be inequitable for MindGeek to retain the financial benefit of its invasion of Plaintiff for its own business purposes and profit.

470.   By virtue of MindGeek's intrusion into Plaintiff's privacy with a high degree of moral turpitude, MindGeek is liable to Plaintiff for punitive damages.

471.   By virtue of MindGeek's intrusion into Plaintiff's privacy, MindGeek is liable to Plaintiff for damages in an amount to be determined at trial.

## **THIRTEENTH CAUSE OF ACTION**

### **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

472.   Plaintiff incorporates by reference and realleges each and every allegation set forth in the foregoing paragraphs 1-277 as if fully alleged herein.

473. As a direct and proximate result of knowingly benefiting from participating, facilitating, aiding and abetting GirlsDoPorn's sex trafficking venture, and from distributing and advertising Plaintiff's GirlsDoPorn content on MindGeek's global platform and sites, MindGeek intentionally inflicted emotional distress against Plaintiff.

474. As a direct and proximate result of knowingly hosting, and continuing to host, Plaintiff's GirlsDoPorn content, without consent, long after the Department of Justice shut down the GirlsDoPorn's sex trafficking venture, MindGeek intentionally inflicted emotional distress against Plaintiff.

475. As a direct and proximate result of knowingly using and misappropriating Plaintiff's name, images, videos, likeness, and/or identity, without consent, on its pornographic sites to maximize views, subscriptions, and revenue, MindGeek intentionally inflicted emotional distress against Plaintiff.

476. MindGeek's actions constitute extreme and outrageous conduct that shocks the conscience.

477. MindGeek intended to cause and did cause Plaintiff severe emotional distress. At the very least, MindGeek recklessly disregarded that its participation in, facilitation, aiding and abetting the GirlsDoPorn sex trafficking venture, and distribution and advertising of Plaintiff's sexually explicit content would cause Plaintiff severe emotional distress.

478. Because MindGeek intentionally inflicted extreme emotional distress on Plaintiff, they are liable to Plaintiff for damages suffered and will in the future continue to suffer as a direct and proximate result.

479. MindGeek was unjustly enriched for intentionally inflicting emotional distress on Plaintiff. It would be inequitable for MindGeek to retain the financial benefit of its distress on Plaintiff for its own business purposes and profit.

480. By virtue of acting intentionally, outrageously, and with a high degree of moral turpitude, MindGeek is liable to Plaintiff for punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants, jointly and severally, in amounts to be determined at trial, as follows:

(a)     Awarding Plaintiff all compensatory, general, special, and consequential damages, including economic and noneconomic damages and reputational harm;

(b)     Awarding Plaintiff restitution for all monies Defendants earned marketing, selling, and exploiting Plaintiff's name, images, and videos;

(c)     Awarding Plaintiff punitive and exemplary damages against Defendants;

(d)     Awarding Plaintiff all damages allowed by 15 U.S.C. §§ 1125, 1116, and 1117, including all actual and consequential damages sustained by Plaintiff, including all economic damages and losses, disgorgement of profits attributable to Defendants' misappropriation of the Plaintiff's images, likenesses, and/or identity as well as treble damages and reasonable attorneys' fees;

(e)     Awarding Plaintiff attorney fees as may otherwise be permitted by law;

(f)     Awarding Plaintiff costs and expenses, including expert fees and costs;

(g)     Awarding Plaintiff pre and post judgment interest at the maximum legal rate;

(h)     Permanently enjoining Defendants from using Plaintiff's videos as well as her name, images, likeness and/or identity in any manner and/or profiting therefrom;

(i)     Declaring the Defendants as alter egos; and

(j)     Granting such further and other relief as this Court deems just and equitable.

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES

1  DATED:  September 8, 2023          BOUCHER LLP

2

3                                     By:      /s/ Raymond P. Boucher

4                                          Raymond P. Boucher (SBN 115364)
                                           Amanda J.G. Walbrun (SBN 317408)
5                                          21600 Oxnard Street, Suite 600
6                                          Woodland Hills, California  91367
                                           Telephone: (818) 340-5400
7                                          Facsimile: (818) 340-5401
8                                          Email:ray@boucher.la
                                                   walbrun@boucher.la
9

10 DATED:  September 8, 2023          BURG SIMPSON
                                     ELDREDGE HERSH & JARDINE, P.C.
11

12

13                                    By:      /s/ David K. TeSelle

14                                         David K. TeSelle, Pro Hac Vice
                                           Lisa R. Marks, Pro Hac Vice
15                                         Morgan L. Carroll, Pro Hac Vice
                                           Alyssa Hill, Pro Hac Vice
16                                         40 Inverness Drive East
17                                         Englewood, Colorado 80112
                                           Telephone: (303) 792-5595
18                                         Facsimile: (303) 708-0527
19                                         Email:dteselle@burgsimpson.com
                                                   lmarks@burgsimpson.com
20                                                 mcarroll@burgsimpson.com
21                                                 ahill@burgsimpson.com

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED:  September 8, 2023          BOUCHER LLP


By:          */s/ Raymond P. Boucher*
            Raymond P. Boucher (SBN 115364)
            Amanda J.G. Walbrun (SBN 317408)
            21600 Oxnard Street, Suite 600
            Woodland Hills, California  91367
            Telephone: (818) 340-5400
            Facsimile: (818) 340-5401
            Email:ray@boucher.la
                   walbrun@boucher.la

DATED:  September 8, 2023          BURG SIMPSON
                                  ELDREDGE HERSH & JARDINE, P.C.


By:          */s/ David K. TeSelle*
            David K. TeSelle, Pro Hac Vice
            Lisa R. Marks, Pro Hac Vice
            Morgan L. Carroll, Pro Hac Vice
            Alyssa Hill, Pro Hac Vice
            40 Inverness Drive East
            Englewood, Colorado 80112
            Telephone: (303) 792-5595
            Facsimile: (303) 708-0527
            Email:dteselle@burgsimpson.com
                   lmarks@burgsimpson.com
                   mcarroll@burgsimpson.com
                   ahill@burgsimpson.com

COMPLAINT FOR DAMAGES