UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 23-07488-MWF (AGRx)                    **Date:** June 24, 2024
**Title:**   Jane Doe v. Aylo Global Entertainment Inc., et al.

**Present:**   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

      Deputy Clerk:                              Court Reporter:
      Rita Sanchez                               Not Reported

      Attorneys Present for Plaintiff:           Attorneys Present for Defendants:
      None Present                               None Present

**Proceedings (In Chambers):**   ORDER RE: DEFENDANTS 9129-1568 QUEBEC, INC.'S, AYLO BILLING US CORP.'S, AYLO GLOBAL ENTERTAINMENT INC.'S, AYLO USA INCORPORATED'S, MG BILLING US CORP.'S, MG FREESITES, LTD'S, MINDGEEK USA INCORPORATED'S, MINDGEEK S.A.R.L.'S MOTION TO DISMISS [55]; DEFENDANT ETHICAL CAPITAL PARTNERS'S MOTION TO DISMISS [56]

Before the Court are two motions to dismiss:

The first Motion to Dismiss (the "Aylo Defendants MTD") was filed on January 17, 2024, by Defendants 9129-1568 Quebec, Inc., Aylo Billing US Corp., Aylo Global Entertainment Inc., Aylo USA Incorporated, MG Billing US Corp., MG Freesites, Ltd, MindGeek USA Incorporated, Mindgeek S.A.R.L. (collectively the "Aylo Defendants"). (Docket No. 55). Plaintiff Jane Doe filed an Opposition on March 6, 2024. (Docket No. 62). Aylo Defendants filed a Reply on March 27, 2024. (Docket No. 64).

The second Motion to Dismiss ("ECP MTD") was filed on January 17, 2024, by Defendant Ethical Capital Partners ("ECP"). (Docket No. 56). Plaintiff Jane Doe filed an Opposition on March 6, 2024. (Docket No. 63). ECP filed a Reply on March 27, 2024. (Docket No. 66).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 23-07488-MWF (AGRx)**                    **Date:  June 24, 2024**

Title:      Jane Doe v. Aylo Global Entertainment Inc., et al.

The Court has read and considered the Motions and held a hearing on **April 22, 2024**.

For the reasons discussed below, the Court rules as follows:

- The Aylo Defendants MTD is **GRANTED**.  All of the claims either fail to state a claim or are barred by the applicable statute of limitations.  On these grounds, the MTD is granted *with leave to amend*.  Additionally, Plaintiff has not demonstrated that the Court can exercise personal jurisdiction over MindGeek S.A.R.L. or that jurisdictional discovery is warranted.

- The ECP MTD is **GRANTED**.  Plaintiff has not demonstrated that the Court can exercise personal jurisdiction over ECP or that jurisdictional discovery is warranted.

- Plaintiff's claims against MindGeek S.A.R.L. and ECP are **DISMISSED** *without prejudice* for lack of jurisdiction.

## I.      BACKGROUND

Plaintiff's Complaint alleges as follows:

A website titled GirlsDoPorn launched in 2009.  (Complaint (Docket No.1) ¶ 92).  GirlsDoPorn principals and staff ran a sex trafficking venture in San Diego, California, which involved recruiting high school and college-aged women for sex through false advertising claiming to offer new modeling opportunities.  (*Id.* ¶¶ 92–96).  Upon the victim's arrival for the photoshoot, GirlsDoPorn principals used drugs, alcohol, fraud, coercion, intimidation, and threats to force the young women to film pornographic videos under the additional false pretense that the videos would remain private, off the Internet, and never be seen in North America.  (*Id.* ¶ 96).  GirlsDoPorn partnered with MindGeek to publish and profit from the videos across numerous online pornography websites.  (*Id.* ¶ 97).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                    Date:  June 24, 2024
Title:     Jane Doe v. Aylo Global Entertainment Inc., et al.

In 2013, Plaintiff saw a Craigslist ad for paid modeling jobs, inquired via email correspondence, and agreed to do one photoshoot.  (*Id.* ¶¶ 112–13).  GirlsDoPorn then paid for Plaintiff's airline tickets and hotel to travel to San Diego for the modeling photoshoot.  (*Id.* ¶ 113).  Rather than the mere headshots and clothing photoshoot that she had agreed to fly to San Diego to do, GirlsDoPorn principals began demanding that Plaintiff film nude and sexually explicit videos.  (*Id.* ¶ 117).  When Plaintiff refused, GirlsDoPorn principals immediately pressured her and plied her with alcohol and drugs to soften her reluctance.  (*Id.*).  GirlsDoPorn principals then assured Plaintiff that the video would only be on DVD and would only be used in Australia.  (*Id.* ¶ 118).  A GirlsDoPorn's principal resorted to blackmail, fear, intimidation, and threats of force against Plaintiff and her family in order for Plaintiff to participate in additional videos. (*Id.* ¶¶ 142, 148).

In January 2014, GirlsDoPorn posted the first video of Plaintiff on MindGeek's network, and the video became wildly successful.  (*Id.* ¶ 173).  GirlsDoPorn then published Plaintiff's full-length videos on its sites and on MindGeek's sites, in partnership with MindGeek as part of MindGeek's Content Partner and Viewshare Programs.  (*Id.* ¶ 177).  Plaintiff told a representative at MindGeek that the posting of the videos (the "Subject Videos") online was done without her consent, but MindGeek continued to host — through its vast collection of pornography websites including, among other sites, PornHub.com, YouPorn.com, RedTube.com, XTube.com, and/or Tube8.com — and use the Subject Videos, and Plaintiff's name, images, likeness, and identity, without her authorization and consent, and for its own financial gain.  (*Id.* ¶ 192, 194, 226(e)).

In June 2016, a civil action in state court was commenced against GirlsDoPorn in San Diego and MindGeek was again informed of GirlsDoPorn's unlawful business practices but continued to host the Subject Videos.  (*Id.* ¶¶ 254, 257).  On December 15, 2020, MindGeek was sued in federal court by fifty other GirlsDoPorn victims for MindGeek's participation in and promotion of the GirlsDoPorn sex trafficking venture. (*Id.* ¶ 263).  As a result of the state court and federal action, MindGeek removed the Subject Videos from the PornHub website.  (*Id.* ¶ 265).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                    Date:  June 24, 2024
Title:     Jane Doe v. Aylo Global Entertainment Inc., et al.

However, subsequent to 2021, MindGeek reposted and republished the Subject Videos and Plaintiff's name, images, likeness and identity to its sites.  (*Id.* ¶ 266).  As a result, Plaintiff lost employment, career opportunities, and special relationships.  (*Id.* ¶ 273).  She also struggles with despair and worthlessness.  (*Id.*).

MindGeek transferred its stock to a newly formed entity in 2023, ECP, to avoid or minimize its legal liability.  (*Id.* ¶ 275).  ECP changed MindGeek's name to Aylo in August 2023.  (*Id.* ¶ 276).

Based on the above allegations, the Complaint asserts twelve claims for relief: (1) benefitting from participation in a sex trafficking venture in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591(a)(2), 1595; (2) advertising a sex trafficking victim in violation of the TVPRA, 18 U.S.C. §§ 1591(a)(1), 1595; (3) conspiracy to commit violations of TVPRA, 18 U.S.C. §§ 1591, 1594(c), 1595; (4) attempt to commit violations of TVPRA, 18 U.S.C. §§ 1591, 1594(a), 1595; (5) aiding, abetting, and inducing sex trafficking in violation of the TVPRA, 18 U.S.C. §§ 2, 1591(a), 1595; (6) false advertising and false endorsement in violation of the Lanham act, 15 U.S.C. § 1125(a); (7) violation of the California's Trafficking Victims Protection Act ("CTVPA"), Cal. Civ. Code 52.5(a); (8) distribution of private sexually explicit materials in violation of Cal. Civ. Code § 1708.85; (9) commercial misappropriation of likeness in violation of Cal. Civ. Code § 3344(a); (10) misappropriation of likeness in violation of California's right of publicity; (11) violation of right to privacy, cal. const., art. 1, § 1; (12) false light invasion of privacy; and (13) intentional infliction of emotional distress.

## II.    **LEGAL STANDARD**

### A.    **Rule 12(b)(6)**

In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its

---

**CIVIL MINUTES—GENERAL**                                              **4**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                    Date:  June 24, 2024
Title:     Jane Doe v. Aylo Global Entertainment Inc., et al.

face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id.* at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props.*, 751 F.3d at 995 (citation omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

### B.    Rule 12(b)(2)

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  "Where, as here, [] [D]efendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (internal quotation marks and citations omitted).  While "conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor," courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit."  *Id.*; *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (citing *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                Date:  June 24, 2024
Title:      Jane Doe v. Aylo Global Entertainment Inc., et al.

        "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [non-resident defendants]."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  "California's long-arm statute," Cal. Civ. Proc. Code § 410.10, "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution."  *Id.*  Because section 410.10 "is coextensive with federal due process requirements . . . the jurisdictional analyses under state law and federal due process are the same."  *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (internal citation omitted).

        There are two varieties of personal jurisdiction based on a defendant's contacts with the forum: general and specific.  General jurisdiction, which "permits a court to hear any and all claims against a defendant, whether or not the conduct at issue has any connection to the forum," may only be exercised where a defendant's contacts with the forum are "continuous and systematic."  *Ranza*, 793 F.3d at 1069–70 (internal quotation marks and citations omitted).  "Specific jurisdiction exists when a case 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'"  *Ranza*, 793 F.3d at 1068 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)).  In order to be subject to a court's specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

## III.    AYLO DEFENDANTS MTD

### A.    Failure To State a Claim Upon Which Relief Can Be Granted

#### 1.  All Claims

        Aylo Defendants argue that all of Plaintiff's claims should be dismissed because she failed to differentiate among any of the Defendants or allege how each Defendant engaged in any of the conduct at issue.  (Aylo Defendants MTD at 2).

        In the Complaint, Plaintiff alleges that MindGeek S.A.R.L. owns and/or controls the majority of pornography on the Internet, including among others, websites

---

**CIVIL MINUTES—GENERAL**                                                        6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 23-07488-MWF (AGRx)                    **Date:  June 24, 2024**
Title:      Jane Doe v. Aylo Global Entertainment Inc., et al.

PornHub.com, YouPorn.com, RedTube.com, Xtube.com, and Tube8.com.  (Complaint ¶ 31).  Plaintiff then alleges that MindGeek S.A.R.L. operates its websites through its wholly owned subsidiary, MG Freesites, Ltd, which does business as PornHub.  (*Id.* ¶¶ 32, 34–35).  Plaintiff also alleges that MindGeek USA Incorporated, 9129-1568 Quebec, Inc., MG Billing US Corp are all wholly owned subsidiaries of MindGeek S.A.R.L.  (*Id.* ¶¶ 37–38, 40).  Plaintiff alleges that 9129-1568 Quebec, Inc. employs numerous employees to operate a portfolio of pornographic websites and that MG Billing US Corp. is a credit card processing company that that works to operate and/or manage the subscription services for one or more of MindGeek's pornographic websites. (*Id.* ¶¶ 39, 41).

Plaintiff also alleges that MindGeek was rebranded to Aylo in August 2023 and the business entities associated with MindGeek were renamed and/or newly established.  (*Id.* ¶ 43).  Plaintiff alleges that Aylo Global Entertainment Inc. is the parent company of Aylo USA Incorporated and Aylo Billing US Corp.  (*Id.* ¶ 45). Plaintiff further alleges that Aylo USA Incorporated has the same business address as MindGeek USA Incorporated and Aylo Billing US Corp. has the same business address as MG Billing US Corp. (*Id.* ¶¶ 46, 48).

Plaintiff alleges that MindGeek entities are or were the alter egos of each other "operating as a single business enterprise to produce, distribute, and monetize pornography on the Internet, commingling its assets in order to shelter and avoid liabilities and in an effort to hide the identity of all of its owners and investors." (*Id.* ¶ 54).  Plaintiff also alleges that "Defendants acted within the course and scope of their authority as agents, servants, representatives, partners, joint venturers, affiliates, successors in interest, parents, subsidiaries, and/or employees and with the permission authorization, consent, and ratification of each other." (*Id.* ¶ 55).

These allegations do not sufficiently put Defendants like MindGeek USA Incorporated, 9129-1568 Quebec, Inc., MG Billing US Corp — that are not alleged to have anything to do with the Subject Videos being published or republished on the various websites — on notice of their wrongful conduct underlying Plaintiff's claims. The alter ego and agency allegations fail to overcome this deficiency because they are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                    Date:  June 24, 2024
Title:     Jane Doe v. Aylo Global Entertainment Inc., et al.

conclusory and unsupported by factual allegations concerning the relationship between each company and how it relates to the alleged wrongful acts.

Accordingly, the Court grants the Aylo Defendants MTD with leave to amend as to all of Plaintiff's claims for failing to provide notice to Defendants under Rule 8.

**2. Advertising a Sex Trafficking Victim (Claim 2)**

Aylo Defendants argue that Plaintiff has failed to allege that Defendants advertised her for a future commercial sex act.  (Aylo Defendants MTD at 7).  Section 1591(a)(1) creates a direct liability claim for advertising a person "in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act."  18 U.S.C. § 1591(a).  Aylo Defendants contend that GirlsDoPorn and its principals allegedly coerced and defrauded Plaintiff into filming the Subject Videos, Aylo Defendants cannot be liable for merely hosting, distributing or even promoting the videos.  (Aylo Defendants MTD at 7).

The court in *Fleites v. MindGeek S.A.R.L.* analyzed, in *dicta*, that a website could be used to effectuate advertisement of a person that leads to further sex acts if, for example, a trafficker posts a video of a person "engaged in a sex act to an online platform like Pornhub and makes known — through the title, tags, or comments on the video, for example — that the [person] is available for future sex acts to those interested."  617 F. Supp. 3d 1146, 1160 (C.D. Cal. 2022).  The court went on to explain that "depending on how the owner of the online platform interacts with the advertisement and video, the platform owner might bear direct trafficker liability for such advertisement under section 1591(a)(1)."  *Id*.

Here, Plaintiff alleges that Aylo Defendants develop, design, edit, and control titles and that Aylo Defendants titled one of the videos as "Miss Colorado Teen in her debut porno."  (Complaint ¶¶ 209, 228).  Plaintiff argues that the term "debut" suggests and offers to customers the promise of future videos.  (Opposition to Aylo Defendants MTD at 11).  However, the Court is not persuaded that using the word "debut" which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                    Date:  June 24, 2024
Title:     Jane Doe v. Aylo Global Entertainment Inc., et al.

is commonly known to mean "a first appearance" is an advertisement for future sex acts.  *See* Debut, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/debut (last visited Apr. 18, 2024).

At the hearing, Plaintiff argued that Aylo Defendants aggressively marketed Plaintiff's video which made it become the second most popular video on all of Pornhub in 2014.  Plaintiff contends that given the partnership agreements, ad sharing, and revenue GirlsDoPorn was incentivized to create further similar videos of Plaintiff.  Plaintiff's argument fails to explain how the incentive to create further videos is an ***advertisement*** for future sex acts to those interested.

Accordingly, the Court grants the Aylo Defendants MTD with leave to amend as to Plaintiff's advertising a sex trafficking victim claim.

### 3.  Attempt to Commit Violations of the TVPRA (Claim 4)

Aylo Defendants argue that the TVPRA does not provide civil liability for "attempted" violations.  (Aylo Defendants MTD at 7).  Aylo Defendants cite to *Ratha v. Phatthana Seafood Co.* for the proposition that civil liability attached only to completed violations, not attempted ones.  (*Id.* at 7–8 (citing *Ratha v. Phatthana Seafood Co*, 35 F.4th 1159, 1176 (9th Cir. 2022) ("Had Congress intended to create civil liability under § 1595 for attempts to benefit, we can reasonably conclude that it would have done so in express terms.  We therefore hold that the phrase 'knowingly benefits' as used in § 1595(a) does not encompass attempts to benefit.")).  However, *Ratha* was decided in May 2022 and in January 2023 Congress explicitly created civil liability under section 1595(a) for "attempts" to benefit.  Abolish Trafficking Authorization Act of 2022, Pub. L. No. 117-347, Title I, § 102, 136 Stat. 6200.

The Complaint seeks to attach liability for attempted violations under a theory of direct liability, section 1591(a)(1), and beneficiary liability, section 1591(a)(2).  (Complaint ¶ 333 (citing 18 U.S.C. §§ 1591(a)(1) and (a)(2))).  In the January 2023 amendment to section 1595(a), Congress only expanded civil liability to those who attempt or conspire *to benefit* from the sex trafficking venture.  18 U.S.C. § 1595(a)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                    Date:  June 24, 2024
Title:       Jane Doe v. Aylo Global Entertainment Inc., et al.

("An individual who is a victim of a violation of this chapter may bring a civil action
against the perpetrator (or whoever knowingly benefits, or attempts or conspires to
benefit, financially or by receiving anything of value from participation in a venture
. . .").

Accordingly, the Court grants the Aylo Defendants MTD with leave to amend as
to Plaintiff's attempt to commit violations of the TVPRA claim to the extent it seeks to
establish liability for an attempted violation of section 1591(a)(1).

### 4.  Aiding, Abetting, and Inducing Sex Trafficking (Claim 5)

Aylo Defendants argue that the TVPRA does not provide civil liability for
"aiding and abetting" violations and that Congress expressly considered and accounted
for potential claims against secondary actors when it added section 1591(a)(2) to the
statute to include "participants" in a sex trafficking venture.  (Aylo Defendants MTD at
8–9).  Plaintiff argues that a statute does not need to include the words "aiding" and
"abetting" in order to have a civil claim based on a theory of aiding and abetting.
(Opposition to Aylo Defendants MTD at 13).

While a statute does not require the use of the terms "aiding" and "abetting" to
allow for aiding and abetting liability, *Doe I v. Cisco Sys., Inc.*, 73 F.4th 700, 744 (9th
Cir. 2023), "there is no general presumption that [a] plaintiff may also sue aiders and
abettors," *Central Bank of Denver N.A. v. First Interstate Bank of Denver, N.A.*, 511
U.S. 164, 182 (1994).  "As the Supreme Court explained in *Central Bank* . . .  if
Congress intended to impose secondary liability by targeting aiding and abetting
action, it certainly knows how to do it."  *Freeman v. DirecTV, Inc.*, 457 F.3d 1001,
1006 (9th Cir. 2006).  In *Central Bank*, the Court examined § 10(b) of the Securities
Exchange Act of 1934 and concluded that the statute did not reach those who aid and
abet violations of the securities laws.  511 U.S. at 177.  "While *Central Bank* involved
Section 10(b) of the 1934 Securities Act, which contains an implied, rather than
express, private right of action, its holding has been extended to statutes, like Section
1591, with express private rights of action."  *Noble v. Weinstein*, 335 F. Supp. 3d 504,
525 (S.D.N.Y. 2018).  This is because the Court's "holding is not based on any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                    Date:  June 24, 2024
Title:      Jane Doe v. Aylo Global Entertainment Inc., et al.

particular feature of the securities laws," *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 281 (D. Conn. 2013), and therefore it is the Court's "approach to interpreting the statute, not the actual statute itself, that is significant," *Freeman*, 457 F.3d at 1006 n.1. In *Central Bank*, the Court determined that none of the express causes of action in the Securities Exchange Act of 1934 extended aiding and abetting liability and in fact included liability for secondary actors when it included "controlling person" liability. 511 U.S. at 183–84.

Therefore, the Court determines that including beneficiary liability to the TVPRA and not aiding and abetting liability "indicates a deliberate congressional choice with which the courts should not interfere." *Central Bank*, 511 U.S. at 184.

Accordingly, the Court grants the Aylo Defendants MTD with leave to amend as to Plaintiff's aiding and abetting claim.

## 5. False Endorsement and False Advertising under the Lanham Act (Claim 6)

Aylo Defendants argue that Plaintiff lacks statutory standing to bring the asserted Lanham Act claim because Plaintiff (1) is not within the Lanham Act's "zone of interest," and (2) fails to allege an economic or reputational injury that was "proximately caused" by Aylo Defendants alleged violation of the Lanham Act.  (Aylo Defendants MTD at 11 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122, 131–32 (2014))).

The Lanham Act "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014).  "A false association claim arises when a defendant makes false representations as to 'the affiliation, connection, or association' of a product or service." *Spicy Beer Mix, Inc. v. New Castle Beverage, Inc.*, No. CV 14-00720-SJO (JEMx), 2014 WL 12573409, at *4 (C.D. Cal. Oct. 10, 2014) (quoting 15 U.S.C. § 1125(a)(1)(A)).  "By contrast, a false advertising claim is based on a false representation as to 'the nature, characteristics, [or] qualities' of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                    Date:  June 24, 2024
Title:      Jane Doe v. Aylo Global Entertainment Inc., et al.

product or service."  *Id.* (quoting 15 U.S.C. § 1125(a)(1)(B)).  Under section 1125(a), a plaintiff must typically show "economic or reputational injury flowing directly from the deception wrought by the Defendants' advertising."  *Lexmark*, 572 U.S. at 133.  "[P]roximate causation may be adequately alleged when 'there is likely to be something very close to a 1:1 relationship between' a plaintiff's lost sales and the sales diverted to a defendant."  *ThermoLife Int'l, LLC v. BPI Sports, LLC*, No. 21-15339, 2022 WL 612669, at *2 (9th Cir. Mar. 2, 2022) (quoting *Lexmark*, 572 U.S. at 139).

Plaintiff argues that she "falls within the 'zone of interests'" because she had "an economic interest in her own reputation and modeling career."  (Opposition to Aylo Defendants MTD at 20).  However, Plaintiff has failed to allege that her "lost jobs" and "employment opportunities" relate to her modeling career and are "too speculative to establish proximate causation."  (Complaint ¶¶ 185–86); *ThermoLife Int'l*, 2022 WL 612669, at *2.  At the hearing, Plaintiff argued that she had real future prospects with Kohl's and Champion.  However, the Complaint does not allege that Plaintiff had prospective modeling opportunities with Kohl's or Champion.  (*See* Complaint ¶ 109 ("Throughout adolescence, Plaintiff professionally modeled clothes for agencies and companies such as Kohl's and Champion.")).

Additionally, Plaintiff has failed to state a plausible Lanham Act claim.  Plaintiff fails to explain or provide case law supporting her argument that allegedly posting the Subject Videos to Pornhub establishes that Plaintiff was endorsing Pornhub.  Plaintiff's argument that Aylo Defendants "deceptively held Plaintiff out publicly as a willing 'porn star' and falsely suggested her presence was voluntary" is also unpersuasive because it is not alleged in the Complaint and does not meet the heightened pleading standard for false advertising claims.  (Opposition to Aylo Defendants MTD at 20); *Southland Sod Farms*, 108 F.3d at 1139 (9th Cir. 1997) ("To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers."); *Seoul Laser Dieboard Sys. Co., Ltd. v. Serviform, S.r.l.*, 957 F.Supp.2d 1189, 1200 (S.D. Cal. 2013) ("District courts in the Ninth Circuit have held that the heightened pleading standard of Federal Rule of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 23-07488-MWF (AGRx)                  Date: June 24, 2024
Title:      Jane Doe v. Aylo Global Entertainment Inc., et al.

[Civil] Procedure 9(b) applies to false advertising claims and requires the plaintiff to plead the 'time, place, and specific content of the false representations,' the identities of the parties to the misrepresentation, and what about the statement is claimed to be misleading.").

Accordingly, the Court grants the Aylo Defendants MTD with leave to amend as to Plaintiff's Lanham Act claim.

### 6. Violation of the CTVPA (Claim 7)

California Civil Code section 52.5 grants victims of human trafficking, as defined in California Penal Code section 236.1, a private cause of action. Cal. Civ. Code § 52.5. The Complaint alleges violations of sections 236.1(a) and (b). (Complaint ¶¶ 385-86). Section 236.1(a) pertains to "[a] person who deprives or violates the personal liberty of another with the intent to obtain forced labor or services." Cal. Penal Code § 236.1(a). Section 236.1(b) pertains to "[a] person who deprives or violates the personal liberty of another with the intent to effect or maintain a violation of" one of the enumerated statutes, including California Penal Code sections 311.2 and 311.5. *Id.* § 236.1(b); *Id.* §§ 311.2 and 311.5 (criminalizing the transportation or promotion of obscene material). The required elements for a California Penal Code section 236.1(a) violation are that: "(1) the defendant either deprived another person of personal liberty or violated that other person's personal liberty; and (2) when the defendant did so, he or she intended to obtain forced labor or services from that person." *People v. Halim*, 14 Cal. App. 5th 632, 643, 223 Cal. Rptr. 3d 491 (2017). Section 236.1(h)(3) defines "deprivation or violation of the personal liberty of another" to include "substantial and sustained restriction of another's liberty accomplished through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person, under circumstances where the person receiving or apprehending the threat reasonably believes that it is likely that the person making the threat would carry it out." Cal. Penal Code § 236.1(h)(3).

Plaintiff argues that in *People v. Guyton*, 20 Cal. App. 5th 499, 229 Cal. Rptr. 3d 117 (2018), "the court expanded its consideration beyond Section 236.1's

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                Date:  June 24, 2024
Title:      Jane Doe v. Aylo Global Entertainment Inc., et al.

nonexhaustive definition of ['deprivation or violation of the personal liberty of another'] and found satisfaction of the element by the defendant's violation of her liberty interest in family." (Opposition to Aylo Defendants MTD at 15–16).  Plaintiff further argues that the Court should similarly consider Aylo Defendants' "deprivation or violation of Plaintiff's liberty interest in her right to privacy in her sex trafficking videos." (*Id.* at 16 (citing Cal. Const., art. I, § 1; Cal. Civ. Code § 1708.85; CACI No. 1810)).  In *Guyton*, the court held that "when a pimp keeps a woman's baby away from her unless she makes enough money to satisfy the pimp, that is a substantial and sustained restriction of the woman's liberty accomplished through force, fear, fraud, deceit, duress or menace."  20 Cal. App. 5th at 506.  Here, Plaintiff has not alleged that hosting the Subject Videos and violating her right to privacy was accomplished through force, fear, fraud, deceit, duress or menace.

Plaintiff also fails to allege the requisite intent.  Plaintiff does not allege that Defendants intended to obtain forced labor, procure sexual intercourse by false pretenses, or extort Plaintiff.

Accordingly, the Court grants the Aylo Defendants MTD with leave to amend as to Plaintiff's CTVPA claim.

B.    **Statute of Limitations**

Aylo Defendants argue that Plaintiff's claims nine through thirteen are time-barred.  (Aylo Defendants MTD at 16).  The parties do not disagree that claims nine through thirteen are each governed by a one- or two-year statute of limitations.  (*Id.* (citing *Alberghetti v. Corbis Corp.*, 713 F. Supp. 2d 971 (C.D. Cal. 2010) (statutory and common law right of publicity claims are subject to a two-year statute of limitations), *aff'd in relevant part*, 476 F. App'x 154 (9th Cir. 2012); *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1018 n.11 (C.D. Cal. 2020) (California constitutional right to privacy claim is subject to a one- or two-year statute of limitations); *id.* at 1023 (intentional infliction of emotional distress claim is subject to a two-year statute of limitations); *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169 (9th Cir. 2011) (false light

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                    Date:  June 24, 2024
Title:       Jane Doe v. Aylo Global Entertainment Inc., et al.

invasion of privacy claim is subject to a one-year statute of limitations)).  However, the
parties disagree on whether the single-publication rule tolls the statute of limitations.

        The statute of limitations is an affirmative defense, and complaints do not
ordinarily need to allege the non-availability of affirmative defenses.  *United States v.
Northern Trust Co.,* 372 F.3d 886, 888 (7th Cir. 2004).  Nonetheless, "[i]f the running
of the statute is apparent on the face of the complaint, the defense may be raised by a
motion to dismiss." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.
1980); *see also Huynli v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)
(affirming dismissal where the running of the statute of limitations and absence of facts
giving rise to equitable tolling were apparent on the face of the complaint).

        Claims arising from an unauthorized use of a plaintiff's name and image, such as
Plaintiff's publicity and privacy claims, are subject to the "single-publication rule."
*See* Cal. Civ. Code § 3425.3; *Christoff v. Nestle USA, Inc.*, 47 Cal. 4th 468, 476–77, 97
Cal. Rptr. 3d 798 (2009) (holding the single-publication rule "applies by its terms to
any action for . . . invasion of privacy" and also "applies to causes of action for
unauthorized commercial use of likeness").  "The single-publication rule limits tort
claims premised on mass communications to a single cause of action that accrues upon
the first publication of the communication, thereby sparing the courts from litigation of
stale claims when an offending book or magazine is resold years later." *Roberts*, 660
F.3d at 1166–67 (internal quotation marks omitted); *see also* Cal. Civ. Code § 3425.3.
The single-publication rule applies to the internet. *Roberts*, 660 F.3d at 1167.  The
statute of limitations begins to run when the challenged material is first made available
to the public. *Yeager v. Bowlin*, 693 F.3d 1076, 1082 (9th Cir. 2012).

        Plaintiff filed this action in September 2023.  She alleges that in January 2014,
GirlsDoPorn had posted the first video of Plaintiff on MindGeek's network.
(Complaint ¶¶ 171, 173).  Six months after the release of the first video, GirlsDoPorn
released additional videos of Plaintiff on MindGeek's network.  (*Id.* ¶ 188).  It is not
clear, from the face of the Complaint, when the last video of Plaintiff was first released
on MindGeek's network.  Plaintiff alleges that it was not until "years later in October
2019" that MindGeek removed the Subject Videos.  (*Id.* ¶ 195).  Plaintiff also alleges

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                    Date:  June 24, 2024
Title:      Jane Doe v. Aylo Global Entertainment Inc., et al.

that MindGeek took the Subject Videos down, but subsequent to 2021, reposted
Plaintiff the Subject Videos.  (*Id.* ¶¶ 265–66).  From the Complaint the last Subject
Video had to have been published before October 2019, thus, it would appear that the
various claims are barred by their respective statute of limitations.

    However, under the single-publication rule, the statute of limitations would reset
when a video is republished.  *Yeager*, 693 F.3d at 1082.  "[U]nder California law, a
statement on a website is not republished unless the statement itself is substantively
altered or added to, or the website is directed to a new audience."  *Id*.  Therefore, the
Subject Videos would not be considered to be republished just by continuing to host
the videos.  *See Oja v. United States Army Corps of Engineers*, 440 F.3d 1122, 1132
(9th Cir.2006) (rejecting the argument that a defendant continuously republished
information by hosting the information on a website).

    Plaintiff contends that the Aylo Defendants "advertised, reuploaded, and re-
distributed her name, image, and videos as recently as Spring of 2023 with alterations,
additions, or direction to a new audience."  (Opposition to Aylo Defendants MTD at
19).  Plaintiff's argument is not persuasive for two reasons.  First, the Complaint does
not allege that the Aylo Defendants reuploaded the Subject Videos as recently as
Spring of 2023 but that they were reuploaded subsequent to 2021.  (Complaint ¶ 266).
Second, the alleged reupload of an ***original video*** with the title "The Beauty Queen
PMV (enjoy your 337 if you delete this again FBI)" does not substantively alter the
Subject Video or direct the ***website*** to a new audience.  (*Id.* ¶ 228).

    At the hearing, Plaintiff argued that the Aylo Defendants attracted new
audiences by using tagging in its algorithms.  However, Plaintiff fails to explain how
the use of tags directs the website to a new audience and is not just recommending the
Subject Videos to users already on the website.

    Accordingly, the Court grants the Aylo Defendants MTD with leave to amend as
to Plaintiff's commercial misappropriation of likeness, misappropriation of likeness,
violation of right to privacy, false light invasion of privacy, and intentional infliction of
emotional distress claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                    Date:  June 24, 2024
Title:      Jane Doe v. Aylo Global Entertainment Inc., et al.

### C.    Personal Jurisdiction - MindGeek S.A.R.L.

Defendant MindGeek S.A.R.L. moves to dismiss the claims against it for lack of personal jurisdiction pursuant to Rule 12(b)(2) because it is a foreign holding company without any presence in the United States.  (Aylo Defendants MTD at 18); Fed. R. Civ. P. 12(b)(2).

### 1.  Evidentiary Issues

In support of its opposition to Aylo Defendants MTD, Plaintiff submits the declaration of Morgan L. Carroll ("Carroll Decl.," Docket No. 62-1) which include two attached exhibits (Docket No. 62-2).  The first exhibit ("Exhibit 1") is the Deferred Prosecution Agreement and related addenda between the Eastern District of New York United States Attorney's Office and MindGeek S.A.R.L. and its subsidiaries.  The second exhibit ("Exhibit 2") is the Information Charge brought by the Eastern District of New York United States Attorney's Office against MindGeek S.A.R.L.  Aylo Defendants argue that both exhibits are inadmissible hearsay.  (Evidentiary Objections, Docket No. 64-1).

"[C]ourts have held that hearsay may be considered for purposes of determining personal jurisdiction, provided it bears circumstantial indicia of reliability."  *Am. Induction Techs., Inc. v. KBK, Inc.*, No. SACV 11-00350-JAK (RNBx), 2012 WL 12888112, at *3 (C.D. Cal. Apr. 17, 2012) (quoting *Bauman v. DaimlerChrysler AG*, No. C-04-00194 RMW, 2005 WL 3157472, *5 (N.D. Cal. Nov. 22, 2005)).  The Court is cautious not to use the exhibits for their broad truths and will use the exhibits not for the truth of their allegations therein, but for the existence of the documents and of their allegations therein.

### 2.  General Jurisdiction

MindGeek S.A.R.L. is a "a foreign entity incorporated in Luxembourg," with a "principal place of business" in Montreal, Quebec, Canada.  (Complaint ¶ 29).  MindGeek S.A.R.L. argues that it is a holding company, does not have any employees

CIVIL MINUTES—GENERAL                                            17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                    Date:  June 24, 2024
Title:       Jane Doe v. Aylo Global Entertainment Inc., et al.

or operations of its own, does not have any offices or employees in the State of
California, let alone the United State, and the other Aylo Defendants are indirect
wholly owned subsidiaries.  (Declaration of Andreas Alkiviades Andreou ("Andreou
Decl."), ¶¶ 5–6 (Docket No. 55-1).  MindGeek S.A.R.L. asserts that it does not
exercise control over the day-to-day decisions of the other Aylo Defendants.  (*Id.* ¶ 6).

        Plaintiff provides Exhibit 1 to argue that that the Aylo Defendants have offices
in California.  (Opposition to Aylo Defendants MTD at 3).  However, it does not refute
MindGeek S.A.R.L.'s declaration that it does not have offices in California as it is
possible that only MindGeek S.A.R.L.'s subsidiaries have offices in California.  "The
existence of a parent-subsidiary relationship is insufficient, on its own, to justify
imputing one entity's contacts with a forum state to another for the purpose of
establishing personal jurisdiction."  *Ranza*, 793 F.3d at 1070.

### 3.  Specific Jurisdiction

        MindGeek S.A.R.L. argues that Plaintiff cannot demonstrate that her alleged
harms arose out of any activity by it.  (Aylo Defendants MTD at 20).  Plaintiff argues
that her claims seek redress for California-related activities surrounding Aylo
Defendants relationship with GirlsDoPorn.  (Opposition to Aylo Defendants MTD at
4). However, Plaintiff does not allege any specific activities taken by MindGeek
S.A.R.L. including that MindGeek S.A.R.L. had any relationship with GirlsDoPorn,
entered into agreements with GirlsDoPorn, or "targeted" California in any manner.

### 4.  Jurisdiction Under Rule 4(k)(2)

        Rule 4(k)(2) provides that, "[f]or a claim that arises under federal law," a court
may assert "personal jurisdiction over a defendant" if (1) "the defendant is not subject
to jurisdiction in any state's courts of general jurisdiction" and (2) "exercising
jurisdiction is consistent with the United States Constitution and laws."  Fed. R. Civ. P.
4(k)(2).  The first requirement is satisfied because the Court determined that based on
the uncontradicted assertions in the Andreou Decl., there is no general jurisdiction in
any state's courts.

---

**CIVIL MINUTES—GENERAL**                                                    **18**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                Date:  June 24, 2024
Title:      Jane Doe v. Aylo Global Entertainment Inc., et al.

Accordingly, "whether personal jurisdiction exists under Rule 4(k)(2) turns on whether the requirements of the Due Process Clause are satisfied here.  A court's exercise of personal jurisdiction over a non-U.S. defendant comports with due process if that defendant has certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 451 (9th Cir. 2024) (citation and internal quotation marks omitted).  "The due process analysis [under Rule 4(k)] is identical to the [California long-arm statute] when the forum was California, except here the relevant forum is the entire United States."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006).

Plaintiff argues that similar to *WebGroup*, the Court should find that there is specific jurisdiction.  (Opposition to Aylo Defendants MTD at 6).  Specific jurisdiction may be exercised under Rule 4(k)(2) by meeting a three-part due process test, showing that: (1) the defendant must have "performed some act or consummated some transaction by which it purposefully directed its activities toward the United States or purposefully availed itself of the privilege of conducting business in the United States;" (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities;" and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."  *WebGroup*, 93 F.4th at 451.  Unlike in *WebGroup*, Plaintiff has filed to establish that MindGeek S.A.R.L. committed intentional acts by operating PornHub.com, YouPorn.com, RedTube.com, XTube.com, and/or Tube8.com.  (*See* Andreou Decl. ¶ 8–9 (MG Freesites, Ltd "is the entity that is responsible for the operation of the Pornhub.com website and other "free" or "tube" sites, such as Redtube.com and Youporn.com.")).  Therefore, Plaintiff fails to satisfy the first prong of the due process analysis.  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) ("The plaintiff bears the burden of satisfying the first two prongs of th[is] test." (citation omitted)).

**5.  Imputing Contacts Based on Alter Ego Theory**

"To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                    Date:  June 24, 2024
Title:      Jane Doe v. Aylo Global Entertainment Inc., et al.

entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Ranza*, 793 F.3d at 1073 (internal quotation marks omitted).

Plaintiff argues that she has established that an alter ego relationship exists through the following assertions: (1) Aylo entities operate in unison and have not now, nor ever been, arms-length distance from one another; (2) Aylo entities share a significant overlap in officers, owners, directors, and managers; (3) Aylo entities share and have shared office locations; and (4) the Federal Elections Commission and the California Fair Political Practices Commission also treated the MindGeek entities as alter egos.  (Opposition to Aylo Defendants MTD at 8–9).

The evidence proffered by Plaintiff for the assertions that Aylo entities operate in unison and have not now, nor ever been, arms-length distance from one another and Aylo entities share and have shared office locations does not refute the Andreou Decl. that MindGeek S.A.R.L. is adequately capitalized, does not control the day-to-day functions of its subsidiaries, and observes corporate formalities.  (Andreou Decl. ¶¶ 5,7; *See* Carroll Decl., Ex. 6 (California Secretary of State Business Filings for Aylo Billing US Corp., Aylo Global Entertainment, Aylo Holdings USA, and Aylo USA Incorporated)).

Plaintiff's assertion that the Federal Elections Commission and the California Fair Political Practices Commission also treated the MindGeek entities as alter egos is also unsupported by the evidence.  Plaintiff does not include any evidence of any statement by the California Fair Political Practices Commission.  In the Federal Elections Commission's Statement of Reasons, it does not identify specific MindGeek entities or state that it is treating them as alter egos.  (Carroll Decl., Ex. 9).

Regarding Plaintiff's assertion that Aylo entities share a significant overlap in officers, owners, directors, and managers, "it is well established that common ownership alone is insufficient to disregard the corporate form."  *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 53 (N.D. Cal. 2020) ("In the absence of evidence of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                  Date:  June 24, 2024

Title:      Jane Doe v. Aylo Global Entertainment Inc., et al.

actual control, courts generally presume that directors can and do "change hats" to
represent each corporation separately.").

        While a court may grant jurisdictional discovery in support of a complaint
"where pertinent facts bearing on the question of jurisdiction are controverted or where
a more satisfactory showing of the facts is necessary," *Boschetto v. Hansing*, 539 F.3d
1011, 1020 (9th Cir. 2008) (citations omitted), the Court determines that Plaintiff has
failed to offer any evidence to contradict MindGeek S.A.R.L.'s evidence and,
therefore, jurisdictional discovery would be a "fishing expedition." *Barantsevich v.
VTB Bank*, 954 F. Supp. 2d 972, 997 (C.D. Cal. 2013).

        Exhibit 1 does not create minimum jurisdiction to grant jurisdictional discovery,
even though MindGeek S.A.R.L. signed off on the agreement on behalf of all the
MindGeek entities, because the agreement does not indicate that there exists unity of
interest and ownership across all of the MindGeek entities.  The signature more
plausibly indicates that the other MindGeek entities are subsidiaries MindGeek
S.A.R.L. and the ease of having one subsidiary sign the agreement.

        According, because Plaintiff has not demonstrated that the Court can exercise
personal jurisdiction over MindGeek S.A.R.L. or that jurisdictional discovery is
warranted, the Court grants the Aylo Defendants MTD as to all claims against
MindGeek S.A.R.L.

**IV.   ECP MTD**

        ECP also moves to dismiss the claims against it for lack of personal jurisdiction
pursuant to Rule 12(b)(2).  (ECP MTD at 7).

        ECP asserts the following: it is a foreign entity and has its principal place of
business outside of the United States; it has no operations in California or the United
States; the March 21, 2023 share purchase transaction was not a merger between ECP
and MindGeek S.A.R.L. nor did it result in the dissolution of MindGeek S.A.R.L.; it is
distinct from the Aylo Defendants, and does not participate in or exercise control over

---

**CIVIL MINUTES—GENERAL**                                                      21

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 23-07488-MWF (AGRx)                    Date:  June 24, 2024
Title:      Jane Doe v. Aylo Global Entertainment Inc., et al.

the Aylo Defendants' day-to-day operations and affairs; there is no overlap of
employees between ECP and the Aylo Defendants; it does not share any bank accounts
with the Aylo Defendants and has never commingled funds or other assets with the
Aylo Defendants; it maintains separate corporate records and otherwise observes
separate corporate formalities.  (Fady Mansour Declaration ("Mansour Decl.") ¶¶ 2, 3,
8, 9, 10, 13, Docket No. 56-1).

        For similar reasons to its ruling as to MindGeek S.A.R.L., the Court also
determines that Plaintiff has not demonstrated that the Court can exercise personal
jurisdiction over ECP.  Additionally, press releases and public statements by ECP is
insufficient to establish an alter ego relationship.  *See Moody v. Charming Shoppes of
Delaware, Inc.*, No. C 07-06073 MHP, 2008 WL 2128955, at *7 (N.D. Cal. May 20,
2008) ("Generic language on [the parent company's] website and in its press releases
simply do not rise to the day-to-day control required to impute the subsidiary's
contacts to the parent.").  Being mentioned in the Deferred Prosecution Agreement as
new ownership also does not rise to the day-to-day control required to impute the
subsidiary's contacts to the parent.  (Carroll Decl., Exhibit 1 at 4).

        Plaintiff also alleges that jurisdiction can be imputed because ECP is a "mere
continuation of the business of MindGeek."  (Complaint ¶ 58).  However, "imposition
of successor liability under the 'mere continuation' doctrine requires that the
predecessor entity that was purportedly acquired by the successor entity no longer
exist."  *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1133 (C.D. Cal.
2015).  Additionally, ECP is three or more corporate levels removed from the acquired
MindGeek S.A.R.L. and Plaintiff has not alleged a link to ECP through the other
entities.  (Mansour Decl. ¶ 6 ("ECP Alpha LP, of which ECP is the General Partner,
owns ECP Alpha Holdings Ltd.  ECP Alpha Holdings Ltd. owns ECP One Limited,
ECP Three Limited, and ECP Four Limited, and on March 21, 2023, these three
entities collectively acquired all shares in MindGeek S.A.R.L.")).  The failure to tie
ECP directly with the acquisition of all of MindGeek S.A.R.L.'s shares make it
difficult to infer that ECP was involved in the acquisition let alone provided
"inadequate consideration" for it."  (Complaint ¶ 57).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** **CV 23-07488-MWF (AGRx)**          **Date:** **June 24, 2024**
**Title:**      Jane Doe v. Aylo Global Entertainment Inc., et al.

Plaintiff has failed to counter ECP's assertions and, therefore, jurisdictional discovery would likely be a fishing expedition and is not warranted.

Accordingly, the ECP MTD is granted.

## V.   <u>**CONCLUSION**</u>

The Aylo Defendants MTD is **GRANTED**.

The ECP MTD is **GRANTED**.

Accordingly, Plaintiff's claims against MindGeek S.A.R.L. and ECP are **DISMISSED** *without prejudice* for lack of jurisdiction.  Judgment shall be entered in favor of these two Defendants and against Plaintiff at the conclusion of the action.

Plaintiff may file a First Amended Complaint ("FAC") by no later than **July 15, 2024**.  Defendants shall respond to the FAC, if filed, by no later than **July 29, 2024**. Failure to file a FAC by that date will be construed as an intention to stand on the existing allegations.

IT IS SO ORDERED.